WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
LAW OFFICES OF WAUKEEN Q. McCOY
555 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone: (415) 675-7705
Facsimile: (415) 675-2530
E-mail:    mail@mccoyslaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No.: 3:15-cv-04515-TEH

**FIRST AMENDED COMPLAINT**

LISA JOHNSON; KATHERINE NEAL;
DEBORAH NEAL; ALLISA CARR;
DININNE NEAL; SANDRA JAMERSON;
LINDA CARLSON; DEBBIE REYNOLDS;
GEORGIA LEWIS; BRIANA ROSENBERG;
TIRA MCDONALD; as individuals,

                    Plaintiffs,
            vs.

NAPA VALLEY WINE TRAIN, INC.;
NOBLE HOUSE HOTELS & RESORTS,
LTD. dba NOBLE HOUSE HOTELS &
RESORTS, LTD. L. P.; BROOKS STREET
PROPERTY MANAGEMENT, INC; KIM
POWERS, an individual; KIRA MCMANUS
DEVITT, an individual; and ANNA
MARQUINN, an individual,

                    Defendants.

1.  DISCRIMINATION BASED ON RACE,
    COLOR, GENDER, AND AGE IN  IN
    VIOLATION OF TITLE VI, 42 U.S.C. §
    2000d ET SEQ.;
2.  DISCRIMINATION BASED ON
    PHYSICAL DISABILITY IN
    VIOLATION OF TITLE III, 42 U.S.C.
    §§ 1981 AND 12181 ET SEQ., AS TO
    PLAINTIFFS DEBORAH NEAL AND
    KATHERINE NEAL ONLY;
3.  DEPRIVATION OF RIGHT OR
    PRIVILEGE IN VIOLATION OF TITLE
    42 U.S.C. §1985;
4.  RACIAL & COLOR
    DISCRIMINATION UNDER COLOR
    OF STATE LAW IN VIOLATION OF
    42 U.S.C. §1983;
5.  DISCRIMINATION BASED ON RACE,
    AGE, COLOR, GENDER IN
    VIOLATION OF CALIFORNIA'S
    UNRUH CIVIL RIGHTS ACT, CAL.
    CIV. CODE §51 ET SEQ.;
6.  LIBEL;
7.  SLANDER;
8.  INTENTIONAL INFLICATION OF
    EMOTIONAL DISTRESS;
9.  BREACH OF CONTRACT;
10. BREACH OF COVENANT OF GOOD
    FAITH AND FAIR DEALING
**$11 MILLION IN COMPENSATORY
DAMAGES REQUESTED**

1

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

## AMENDED COMPLAINT FOR RACE, GENDER,  AGE AND
## DISABILITY DISCRIMINATION
## DEMAND FOR JURY TRIAL

This is a First Amended Complaint Filed Pursuant to Fed. Rules Civ. Proc. Rule 15(a)(B), pursuant to a FRCP §12(b)(6) and 12(f)(2). The initial complaint was filed on October 1, 2015.  A motion to dismiss under Fed. Rules Civ. Proc. §12(b)(6) and 12(f) were filed by Defendants. This Amended Complaint is filed in response and in Opposition to Defendants' motion.  There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in the original Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

Plaintiffs named above, and each of them, as individuals, by and through their attorneys, Law Offices of Waukeen Q. McCoy, for their Amended Complaint against the Defendants, and each of them, hereby states as follows:

### JURISDICTION AND VENUE

1.    Plaintiffs bring this action under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d *et seq.*, and under 42 U.S.C. §1983, for race, age and gender discrimination, and under Title III of the Americans With Disabilities Act, 42 U.S.C. §12181 et seq.

2.    This Court has jurisdiction pursuant to the following statutes:

a.    28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States;

b.    28 U.S.C. §1343(1), (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States Government;

c.    28 U.S.C. §1367, which gives district courts supplemental jurisdiction over state law claims.

2

3.     Venue is proper in this judicial district under 28 U.S.C. §1391(b) because the events, as recited herein, that gave rise to this Frist Amended Complaint occurred in this district.

## THE PARTIES

4.     Plaintiffs, and each of them, are citizens of the United States and residents of the County of Contra Costa, State of California, which is in this judicial district, except for Plaintiff Briana Rosenberg. Plaintiff Briana Rosenberg is a citizen of the United States, and a resident of Alameda County, State of California, which is also in this judicial district.

5.     Plaintiffs, and each of them, are African American women, except Plaintiff Linda Carlson. All Plaintiffs are members of a Book Club called "Sistahs On The Reading Edge" ("Book Club") which was founded in 1997 by Plaintiff Lisa Johnson, who is also its president.

6.     Plaintiff, Katherine Neal is an eighty-five (85) year old African American woman with mobility problems and uses a cane for support.  She is a retired hospital worker.

7.     Plaintiff, Georgia Lewis ("Lewis") is a sixty-six year old African American and is a retired senior.

8.     Plaintiff Sandra Jamerson ("Jamerson") is a sixty-three year old African American woman and is a retired senior.

9.     Plaintiff Deborah Neal ("Neal") underwent knee surgery shortly before the incident described herein, and was, at all times relevant herein, and still is, disabled and has to use a cane for mobility purposes.

10.     Defendant NAPA VALLEY WINE TRAIN, INC., ("NVWTI") is a corporation duly organized under the laws of the State of California and does business in the Counties of Napa and Sonoma, State of California, which are in this judicial district. NVWTI owns and operates wine trains ("Wine Train or Train") by, along with, and through its co-owners and its property management company, as alleged herein, operates "Trains" between Napa and St. Helena, in California.

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

11.      Defendant NOBLE HOUSE HOTELS & RESORTS, LTD. (''NOBLE'') is a Texas corporation with its principal place of business in Kirkland, in the State of Washington.  At all times relevant herein, NOBLE HOUSE was licensed to do business and did, in fact, conduct business in Napa County and throughout the State of California.

12.      BROOKS STREET PROPERTY MANAGEMENT, INC. ("BROOKS") is a real estate management and investment California company, with its principal office in Newport Beach, State of California, and does business in Napa and Sonoma Counties in the State of California, which are in this judicial district.

13.      Plaintiffs are informed and believe and, based thereon allege that defendants, NVWTI, NOBLE, and BROOKS jointly own and operate the wine train ("Train")

14.      Defendants NVWTI, NOBLE AND BROOKS are, jointly and severally responsible for the operations, hiring, supervision, delegation of powers, training, disciplining and managing their employees involved in the operation of the Train.  They are, jointly and severally responsible and liable for the acts of commission and omission of their employees, under the doctrine of *respondeat superior*.

15.      Upon information and belief, Plaintiffs allege that the wine train is one of Napa Valley's most popular recreational spots, operating gourmet dining trains ("Train") running between the Cities of Napa and St. Helena, offering to their patrons multiple course gourmet meals and wines from area wineries on the Train, exclusive winery tours and wine tasting at one or more of their many outstanding partner wineries.  The Train also includes a "Bar Car" where wines and other libations are freely served.

16.      The Wine Train also advertises its train rides through picturesque Napa Valley, and periodically offers to the public promotional discount coupons for their train rides and gourmet lunches, dinners, with featured wines, especially during the holiday season.

4

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

17.    On information and belief, Plaintiffs allege that NVWTI has received and continues to receive substantial federal funding and assistance for the continuing operation of the Wine Train, and for repair and maintenance of its exclusively used train tracks. NVWTI received over $65 million in federal funds, at least $54 million of which was part of a Federal Stimulus Award for the relocation, repair, elevation and maintenance of its train tracks. The Wine Train  project is expected to take about two and a half years to complete. The United States Army Corps of Engineers was assigned to carry out the project as part of their Napa Valley Flood Control Contract.  The Mayor of the City of St. Helena, remarked that even though the streets in the city needed to get paved, "this batch of tax money was going to the train tracks."

18.    Upon information and belief, Plaintiffs allege that the Cities of Napa and St. Helena, both of which benefit from the operations of the Wine Train, which is a major tourist attraction, provide security and police services to NVWTI for its Wine Train operations.

19.    Defendant Kim Powers ("Powers") was, at all times relevant herein,  has been, and, plaintiffs believe, still is an agent and employee of Defendants NVWTI, NOBLE, and BROOKS, and committed and/or ratified the occurrences, acts, and omissions complained of herein while acting and operating within the course and scope of such agency and employment.

20.    At all times relevant herein, Defendant Kira McManus Devitt ("Devitt") was, and, plaintiffs believe, is still an agent and employee of NVWTI, NOBLE, and BROOKS, and committed and/or ratified the occurrences, acts, and omissions complained of herein while acting and operating within the course and scope of such agency and employment.

21.    At all times relevant herein, Defendant Anna Maroquinn ("Maroquinn") was, and, plaintiffs believe, is still an agent and employee of NVWTI, NOBLE, and BROOKS, and committed and/or ratified the occurrences, acts, and omissions complained of herein while acting and operating within the course and scope of such agency and employment.

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

22.     At all times mentioned herein, each of the Defendants was the agent, employee, superior, and/or supervisor of each other and committed the occurrences, acts and omissions complained of herein while acting within the course and scope of such agency, employment, authority and supervision. Each Defendant is thus responsible for the occurrences, acts of commission and omission of each other Defendant, as alleged herein.

## GENERAL ALLEGATIONS

23.     The Book Club holds its monthly dinner meetings frequently at upscale and gourmet restaurants, wine clubs and other places of entertainment, to make the meetings more social, lively and enjoyable. As part of their Book Club's "fun" activities, the plaintiff group makes an annual trip to Napa Valley wineries. This year, 2015, the Book Club decided to ride the Wine Train instead of visiting various individual wineries, as they had not been on the Wine Train before.

24.     On or about December 1, 2014, in response to Wine Train's Cyber Monday promotional deals, Plaintiffs as a group, except Debra Neal, telephoned the Wine Train's reservations office and purchased tickets for rides on the Train, using their widely disseminated discount coupons or certificates.

25.     In the course of the purchase, Plaintiff Lisa Johnson, informed the Wine Train's reservations agent, that the riders were a party of eleven, all belonging to a book club, and requested group seating as they had plans to discuss the book assigned to them for reading, and that it was also an annual fun-loving outing together to Napa. She also informed them that some of the members of the group have some mobility restrictions. The reservations agent assured Plaintiff Johnson and other members of the Book Club that Wine Train would be happy to accommodate the group and their requests and requirements.

26.     Based on these representations and assurances, nine Plaintiffs except Plaintiffs Debra Neal, and Katherine Neal, purchased their tickets and made reservations for the train ride to take place on August 22, 2015.

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

27.     On or about May 12, 2015, Plaintiff Deborah Neal purchased her own ticket and an additional ticket for her mother-in-law, Plaintiff Katherine Neal, as a surprise gift.  On this occasion, Plaintiff Neal reiterated to the reservations agent that the group was a book club and would be discussing the monthly assigned book with lots of dialog, fun and laughter and requested that all of them should be seated together in close proximity so that they could hold their discussions without disturbing other passengers. She also informed the reservations agent that this was their first Train ride and, considering the nature of the book club and the size of the group, it would be reasonable to expect a noise level commensurate with eleven people discussing the merits of the book assigned for reading, while eating and drinking wine and having fun.  The reservations agent, an employee of NVWTI, assured the Plaintiffs that it was normal for the Train to have various noisy groups all the time, and that they would be happy to accommodate the Plaintiffs group and their requests.

28.     On or about July 23, 2015, Plaintiff Deborah Neal contacted the Wine Train reservation office again and confirmed the reservations for their ride on the Train for August 22, 2015 and their request for special seating. Defendant Neal also informed the Reservations agent that she underwent knew surgery recently and that her mobility was restricted.  Again, she was assured that the NVWTI would honor the group's requests.

29.     Again, on or about August 17, 2015, Plaintiff Deborah Neal contacted the Wine Train Reservation Agent to discuss in more detail their lunch plan and itinerary for the day.  She was assured everything was being arranged according to their request.

30.     Plaintiffs, and each of them, booked the Train ride for August 22, 2015, as a "Gourmet Lunch" trip.  Besides being a Saturday for their monthly Book Club meeting, the date also had a special significance for them. It was Plaintiff Sandra Jamerson's birthday, and also the day when the Book Club, as a group paid tribute to and toasted Plaintiff Jamerson's twin sister, a flight attendant on UA Flt. #93, who was killed on 9/11, in the course of the destruction of the Twin Towers of the World Trade Center

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

by al Qaida, and was deliberately crashed into a field in Pennsylvania. This was an annual event of solemn remembrance for them and a very emotional one.

31.    Plaintiff, Deborah Neal bought an extra ticket as a surprise gift for her mother-in-law, Plaintiff Katherine Neal, because Katherine enjoyed train rides since she was a child and was excitedly looking forward to the gourmet experience and the picturesque scenery the ride Defendants were advertised and promised

32.    When Plaintiffs were ready to board the Wine Train at Napa on August 22, 2015, at about 11:00 a.m., there were no Train attendants to help Plaintiffs Katherine or Deborah Neal to climb the steps on to the train. Plaintiff Lisa Johnson and other plaintiffs had to help Plaintiffs Deborah Neal in boarding the train as she had undergone knee surgery and was using a cane for mobility. Similarly, they had to help Plaintiff Katherine Neal who is eighty five years old and also uses a cane for support.

33.    On boarding the Train, Plaintiffs found that they were not provided any special seating together as requested by them and promised by the reservation agent, but were seated at the back of the "Bar Car" which had a bar and was the last car on the train. Eight of the Plaintiffs were seated at two tables, four to a table, two on each side of the aisle, and the remaining three Plaintiffs were seated along the window in an "L" shaped configuration. The seating configuration made conversation very difficult and was not conducive to a group discussion or even regular conversation without talking out loud, considering the noise of the moving train and the high noise level created by other passengers on the train.

34.    On boarding the Train, plaintiffs were chatting with each other, like the rest of the passengers, taking pictures and were settling down to the three hour, twenty-five mile train ride.

35 .    Even before the train left Napa, the Train's maître d'hotel, Defendant, Anna Maroquinn, approached the group and admonished them saying "tone down your noise level because you're being offensive to other passengers." When Plaintiff Lisa Johnson asked Defendnat Maroquinn which passengers

8

were offended, she refused and declined to answer. Plaintiff Lisa Johnson then advised Defendant Maroquinn that they would do their best, but it was difficult for a group of eleven, given the seating configuration, to "tone it down." Defendant Maroquinn scolded them like children who needed to be disciplined by a school teacher for misbehaving.

36.     About 45 minutes into the train ride and after the first warning, while the group was still settling down to begin their book discussion, Defendant Maroquinn returned and, again admonished the group to tone it down, stating, "That's it. This is not going to work. Either you guys tone it down or I am going to have to ask you to leave the train." Defendant Maroquinn told them that their group was offending other passengers. When Plaintiff Lisa Johnson asked her for the identity of the person(s) who were offended and/or complained, she again refused and declined to provide the name(s) of the complainant(s) but stated "I can see it on the face of other passengers when you laugh out loud."

37.     Plaintiff Lisa Johnson asked white passengers seated close to them if they were offended by the plaintiffs' group discussions and laughter and were told that they were actually enjoying the company and the jokes of the group. Another unidentified passenger, a Caucasian woman, who was seated nearby, leaned into the aisle and yelled "This is not a bar." Plaintiff Lisa Johnson responded stating it was designated as a Bar Car and pointed out the bar behind this passenger. There was no further comment from this passenger.

38.     When Plaintiff Lisa Johnson asked Defendant Maroquinn why they were being singled out while other groups of passengers who were more noisy were not subject to the same treatment, she did not answer them but said that when they reached St. Helena, police would be waiting there to escort them off the train. Plaintiffs are informed and believe that Defendants work in conjunction with the St. Helena Police Department.

39.     Plaintiffs were shocked that Defendant had called the police to expel them from the train, as though they had committed a crime and were being removed.

9

40.     Defendant Maroquinn told the other passengers and the police that Plaintiffs group was "unruly and aggressive" and were offending other passengers on the train, which she knew was not true.

41.     When the Train reached St. Helena, all the Plaintiffs were asked to sit and wait and not leave the car, while all the other white passengers were politely escorted by Train staff on board to the dining cars for lunch.

42.     After waiting for about fifteen minutes, the Train staff arrived to walk the plaintiffs, and each of them, to the front of the Train where police officers were waiting for them.  Plaintiffs were not allowed to exit the train from the car where they were seated but were marched through all the other six cars like they were on exhibition, while some of the passengers who were still seated, snickered and jeered.

43.     The non-African American plaintiff was also assumed to be an African American because she was in the company of African American women, socializing and fraternizing with them, and was also expelled from the train with the rest of the African American women.  By association, she was deemed African American and was treated like an African American woman.

44.     The long march through six or more Train cars was very painful, physically and emotionally, and difficult for Plaintiff Katherine Neal who is eighty-five years old and for Plaintiff Deborah Neal who had a recent knee surgery and had to use a cane as support while standing or walking. With their limited mobility, it was extremely difficult for both of them to navigate the narrow aisles on the Train. Train staff, including Defendant Maroquinn, did nothing to help them. Both of them had to walk sideways through parts of the Train to avoid bumping into seated passengers. Instead, she was yelling and urging the Plaintiffs "to hurry up" as the police officers and passengers were waiting and the Train had to leave.

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

45.     Upon exiting the Train, Plaintiff Deborah Neal broke down and sobbed.  Many of the other plaintiffs were also crying at the humiliating experience.  Passengers were gawking at them wondering what the had done that they were being hauled off the Train.

46.     Plaintiffs, and each of them, stepped off the train on to a dirt lot where four police officers were waiting for them to escort them off the train on to a waiting van to be transported back to NAPA. One of them was a Wine Train rail officer and the other three were from St. Helena Police Department.

47.     Plaintiffs stood outside in the hot sun talking to the police officers for over twenty minutes. The police officers then escorted them to the van which drove them back to Napa for their return home.

48.     The extreme and outrageous conduct of the Defendants and each of them, the Train staff, the public humiliation at being paraded all the way from the back of the train to the front, kicked off the Train, and the police waiting to escort them off the train as if they had committed a crime, caused each of the Plaintiffs severe trauma and great emotional distress.

49.     On information and belief, Plaintiffs allege that police had never been called to expel or escort any passenger off the Train at any time before the incident described herein.

50.     On information and belief, Plaintiffs allege that the same day that Plaintiffs were so disparately, rudely and humiliatingly marched off the Train and expelled, a group of white pilots who were on board the evening Train, were completely inebriated, boisterous and extremely loud, noisy and annoying. Even though several passengers complained, the white men were not booted off the Train as the black plaintiffs were earlier in the day.

51.     Shortly after the occurrences as alleged herein, and as further humiliation and discrimination, Defendants posted a statement on Facebook about the plaintiffs being kicked off the train. Part of the posted statement read "[F]ollowing verbal and physical abuse toward other guests and staff, it was necessary to get our police involved.  .  .  . Many groups come on board and celebrate.  When those celebrations impact our guests, we do intervene."  Plaintiffs believe that Defendants Kim Powers and

11

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

Kira McManus Devitt were responsible for the Face Book Posting, knowing that it was completely false. Plaintiffs did not "verbally or physically abuse" anyone on the train or elsewhere.

52.   On formation and belief, Plaintiffs alleged that Defendants NVWTI, NOBLE HOUSE and BROOKS STREET condoned and ratified the conduct and behavior by their employees and allowed such humiliating, discrimination and disparate treatment of African women in such a blatant fashion.

53.   The Face Book posting, within minutes after it appeared on the Internet, had gone viral and was reposted several times by other social media and was sent and read by thousands of people all over the country and even outside the country.

54.   Plaintiffs are all well-educated, respected members of their respective communities and never experienced enormous public humiliation and trauma of this kind before. Their reputation and images are greatly tarnished and they have been irreparably damaged by the occurrences as alleged herein.

55.   Plaintiff Lisa Johnson is employed as a Grants and Contracts Manager for First 5 Contra Costa Children and Families Commission and is a published author.  She holds a Bachelor of Science degree in Health Sciences and a Master's degree in Public Administration.  She is the founder and president of the Book Club which she established in 1997.

56.   Plaintiff Katherine Neal is an eighty-five (85) year old African American woman.  She was employed by Harper Hospital in Detroit, Michigan as Housing Aid for Nurses and Doctors, until her retirement.

57.   Plaintiff Allisa Carr holds a Bachelor's degree in Business Administration with a minor in Marketing. At the time of the occurrences alleged herein, was employed as a Card Sales Support Manager and Assistant Vice-President of U.S. Bank.

58.   Plaintiff Sandra Jamerson is a sixty-three (63) year old African American woman who is now retired.  She holds a Bachelor's degree in Organizational Behavior and an Associate degree in

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

General Studies.  Prior to her retirement, she was employed by Pacific Telephone & Telegraph, Pacific Bell, Southwestern Bell, & AT&T Services as a Program/Project Manager.

59.   Plaintiff Debbie Reynolds is a registered nurse and an author.

60.   Plaintiff Georgia Lewis is a sixty-six year old retiree.  Prior to her retirement, she was employed by AT&T as a Manager.

61.   Plaintiff Deborah Neal is a sixty year old and is now retired.  Prior to her retirement, she was employed as a Manager at Kaiser Permanente Medical Center and as a Manager at Comcast.  Her husband of forty years served in the U.S. Navy and she traveled widely around the world as a "Navy Wife."

62.   Plaintiff Tira McDonald is employed by Wells Fargo Bank as a Direct Marketing Program Manager. She holds a Bachelor's degree and a Masters degree in Business Administration.

63.   Plaintiff Briana Rosenberg holds a Bachelor's degree in Liberal Studies and has completed post-graduate studies in Speech Language Pathology.  She is a lead teacher at a State-sponsored pre-school.

64.   Plaintiff Linda Carlson is employed as a letter carrier for the U.S. Postal Service.

65.   Plaintiff Dininne Neal is employed as a legal secretary.

66.   The president of NVWTI, Anthony Giaccio, publicly and, in writing, admitted wrong-doing by NVWTI and accepted full responsibility for it.

## COUNT  ONE
## <u>VIOLATION OF 42 U.S.C. §2000d ET SEQ.</u>

67.   Plaintiffs incorporate and restate each of paragraphs 1 through 60 above, as though fully set for the herein.

68.   Title VI, 42 U.S.C. §2000d et seq., prohibits discrimination on the basis of race, color and national origin in programs and activities receiving federal financial assistance.  Enabling regulations, 28

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

C.F.R. §42.104 provide in pertinent part as follows:

> **§42.104  Discrimination prohibited.** (emphasis in original)
> (a) *General.* No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this subpart applies.
> (b) *Specific discriminatory actions prohibited.* (1) A recipient to which this subpart applies may not, directly or through contractual or other arrangements, on the ground of race, color, or national origin:
>   (i) Deny an individual any disposition, service, financial aid, or benefit provided under the program;
>   (ii) Provide any disposition, service, financial aid, or benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program;
>   (iii) Subject an individual to segregation or separate treatment in any matter related to his receipt of any disposition, service, financial aid, or benefit under the program;
>   (iv) Restrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any disposition, service, financial aid, or benefit under the program;
>   (v) Treat an individual differently from others in determining whether he satisfies any admission, enrollment, quota, eligibility, membership, or other requirement or condition which individuals must meet in order to be provided any disposition, service, financial aid, function or benefit provided under the program.

69.   As alleged in paragraph 17 above, Defendants have received and continue to receive Federal funding and/or assistance to  repair,  relocate,  elevate  and  maintain  train  tracks  which  are  used exclusively by Wine Train in its operation of its trains.

70.   Defendants, and each of them, have discriminated against the complaining Plaintiffs, and each of them, on the basis of their race, color (African American) and gender as alleged in paragraphs 1 through 66 incorporated herein.

71.   Defendants, and each of them, have not expelled any Caucasian Americans from the Train for being loud and noisy, the way Plaintiffs, and each of them, were.

72.   As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq.,

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

Plaintiffs have suffered injuries and damages as alleged herein.

73.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Plaintiff Sandra Jamerson could not celebrate her birthday happily with her friends and instead was subject to trauma, humiliation and outrageous discrimination based on her race, color and gender.

74.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Plaintiff Sandra Jamerson could not, along with her friends and Book Club members, honor or toast her twin sister who perished during the 9/11 al-Qaeda attacks.

75.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Plaintiff Kathrine Neal did not get to enjoy the Train ride she was so eagerly looking forward to.  Instead, the day was one of horror, trauma and extreme humiliation by the Defendants and each of them.

76.     Defendants' extreme and outrageous treatment of Plaintiffs, and each of them, has caused great humiliation, trauma and severe emotional distress to each of them.

77.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Plaintiff Allisa Carr, was terminated from her employment.

78.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Plaintiff Debbie Reynolds, was terminated from her employment.

79.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Plaintiffs Allisa Carr and Debbie Reynolds, sustained injuries, and damages according to proof.

## COUNT TWO
## VIOLATION OF 42 U.S.C. §12181 ET SEQ
## AS TO PLAINTIFFS  DEBORAH NEAL AND KATHERINE NEAL ONLY

80.     Plaintiffs incorporate and restate each of the above paragraphs 1 through 79 above, as if fully set forth herein.

81.  42 U.S.C. §12182, Americans with Disabilities Act, ("ADA") prohibits discrimination on the

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

basis of, *inter alia*, physical handicap in public accommodations like the Wine Train, which is touted by Defendants as a "Gourmet Restaurant" on wheels.

82.    Even though Defendants were informed and could also see that Plaintiffs Deborah Neal and Katherine Neal were physically disabled and had difficulty walking without a cane, Defendants did not help them in boarding the Train nor assist them in alighting from the car in which they were seated, but paraded them through six cars, maneuvering narrow aisles, with great difficulty, walking sideways through certain parts of the train cars, and  having difficulty going down the steps on to the dirt pavement.

83.    Defendants, and each of them, knew or should have known that the provisions of the ADA are applicable to them but chose to ignore them at least as far as the complaining plaintiffs here were concerned. They did nothing to accommodate their physical disability or help them in any way getting through the six cars and in getting off the train at St. Helena.  Defendants, and each of them, thus violated applicable provisions of ADA.

84.    Plaintiff Deborah Neal who had recent knee surgery was in such excruciating pain that she broke down and sobbed. She also suffered trauma and humiliation at the outrageous conduct of the Defendants.

85.    Plaintiff Katherine Neal who is eighty-five years old, had a great deal of difficulty walking through the aisle of eight cars and alighting the train on to the dirt platform at St. Helena.  She also suffered from pain, trauma and humiliation.

86.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §§12181 and 12182, Plaintiffs have suffered injuries and damages as alleged herein.

## COUNT THREE
## VIOLATION OF 42 U.S.C. §1985

87.    Plaintiffs incorporate and restate each of the above paragraphs 1 through 74, 76 through 86

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

above, as if fully set forth herein.

88.   42 U.S.C. §1985 (3) DEPRIVING PERSONS OF RIGHTS OR PRIVILEGES - provides in pertinent part:

> ". . . . . .in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators."

89.   Defendants NVWTI, NOBLE AND BROOKS, espoused and promulgated discriminatory policies and practices through out the operations of the Wine Train and conspired to deprive minorities, seniors, disabled passengers and other citizens of the United States of their civil rights, as alleged herein.

90.   Defendants, and each of them, subjected Plaintiffs, and each of them, to outrageous, public humiliation and intentionally reckless conduct, as described herein, based on their color, race, age, gender and disability.

91.   Defendants, and each of them, further treated Plaintiffs disparately from other non-African American passengers.

92.   As a direct and proximate result of Defendants' violation of 42 U.S.C. §1985, as alleged herein, Plaintiffs, and each of them, have suffered injuries and damages as alleged herein.

## COUNT FOUR
## VIOLATION OF 42 U.S.C. §1983

93.   Plaintiffs incorporate and restate each of the above paragraphs 1 through 92 above, as if fully set forth herein.

94.   Defendants, and each of them, have deprived Plaintiffs of their federal constitutional and/or statutory rights by failing and refusing to provide Plaintiffs with equal treatment as their white passengers and committed or omitted discriminatory acts as alleged herein.

95.     In furtherance of their discriminatory policies and practices, Defendants, and each of them, co opted the support, cooperation and services of the police to discriminate against Plaintiffs, and each of them, and to expel them from the Train as if it was a joint official action of the police.

96.     The police officers who escorted Plaintiffs, and each of them, off the Train on to a waiting van to take them back to Napa, accepted Defendants' representations, did not interview any witnesses, did not do any independent investigation, before escorting Plaintiffs, and each of them, off the Train.

97.     Defendants, and each of them, acted under color of state law when they deprived Plaintiffs of their federal rights, property interests and otherwise discriminated against them based upon Plaintiffs' race, color, age and disability.

98.     As a direct and proximate result of Defendants' violation of 42 U.S.C. §1983 Plaintiffs, and each of them, have suffered injuries and damages as alleged herein.

## COUNT FIVE
## VIOLATION OF UNRUH CIVIL RIGHTS ACT, 51 CIV. CODE § 51 ET SEQ

99.     Plaintiffs incorporate and restate each of the above paragraphs 1 through 98 above, as if fully set forth herein.

100.    California Civ. Code §51(b) provides in pertinent part as follows:

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

101.    California Civ. Code § 52(a) further provides in pertinent part as follows:

(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

102.     As alleged herein the incorporated paragraphs herein, Defendants, and each of them, did discriminate against Plaintiffs, and each of them, on the  basis of their color, race, gender, age, and disability as defined in Civ. Code §51(e)(5) and §51(f).

103.     As a direct and proximate result of Defendants' violation of Cal. Civ. Code §51et seq., Plaintiffs, and each of them, have suffered injuries and damages as alleged herein.

104.     Civ. Code §52(a) further provides for an award of punitive damages and attorneys' fees by a court or jury.

## COUNT SIX
## LIBEL; VIOLATION OF CAL CIV. CODE §§43, 45

105.     Plaintiffs incorporate and restate each of the above paragraphs 1 through 104 above, as if fully set forth herein.

106.     Civ. Code § 45 defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

107.     On April 22, 2015, shortly after expelling Plaintiffs, and each of them, from the Train, Defendants, and each of them, acting as agents of each other, and acting in the course and scope of their authority, and with knowledge that they were false, posted a statement on Facebi=ook.  The posting was about the Plaintiffs and stated in part that "[F]ollowing verbal and physical abuse towards other guests and staff, it was necessary to get our police involved."

108.     Defendants, and each of them, made the above statements, knew that they were false and unprivileged and made intentionally with malice, oppression, and reckless regard for the truth, to further discriminate, embarrass and harm Plaintiffs, and each of them.

109.     The Facebook posting immediately went viral and was reproduced over and over again, by

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

other social media, like YouTube, Twitter etc., and news media like CBS, New York Times and other publications and continues to be so reproduced. It has resulted in several publications worldwide. It has been viewed by and communicated to thousands if not millions of readers.

110.     The Facebook posting refers to Plaintiffs, and each of them, without innuendo or explanation, and are libelous on their face, accusing Plaintiffs, and each of them, with unlawful or criminal conduct, and thereby exposes them, and each of them, to hatred, contempt, ridicule, or obloquy, and causes them to be shunned or avoided, or has injure them in their occupations, professions and reputation.

111.    As a direct and proximate result of these false publications and violations of Civ. Code, §§43, 45, by Defendants, and each of them, Plaintiffs, and each of them, have suffered injuries and damages according to proof.

112.     As a direct and proximate result of these false publications, libelous statements and violations of Civ. Code, §§43, 45, by Defendants, and each of them, Plaintiffs, Debbie Reynolds and Allisa Carr were terminated from their employment.

113.    The malicious and despicable conduct by Defendants, and each of them, as recited herein, Plaintiffs, and each of them, seek punitive damages, as authorized by law.

## COUNT SEVEN
## SLANDER; VIOLATION OF CAL. CIV. CODE §46

114.    Plaintiffs incorporate and restate each of the above paragraphs 1 through 74, 76 through 82, 84 through 88, 90 through 94, 97-99, and 103 through 109 above, as if fully set forth herein.

115.    California Civil Code §46(a) defines slander as a false and unprivileged publication, orally uttered that "charges any person with a crime or criminal conduct; or tends to directly injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation particularly requires, or by imputing something by

20

imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits." §46(3); or "[b]y natural consequence, causes actual damage." §46(5).

116.   On August 22, 2015, while Plaintiffs were on board the Train, Defendant, Maroquinn, while acting within the course and scope of her duty, employment, authority and/or agency granted to her by Defendants, NVWTI, NOBLE, and BROOKS, and in the course of having Plaintiffs, and each of them, evicted from the Train told police officers and other passengers on the Train that Plaintiffs were "unruly and aggressive" and were "verbally and physically abusive."  She knew these statements were false and unprivileged and made intentionally with the knowledge that these false statements would harm plaintiffs and would expose them, and each of them, to hatred, contempt, ridicule, or obloquy, and causes them to be shunned or avoided, or has injure them in their occupations,  trade,  professions and reputation.

117.   Based on these false statements and accusations, Plaintiffs, and each of them, were evicted and escorted off the Train by police in the presence of other passengers on the Train.

118.   Upon information and belief, Plaintiffs allege that these statements were reasonably understood by members of the public were about the Plaintiffs, and each of them, and were about and concerned Plaintiffs, and each of them.

119.   As a direct and proximate result of these false publications, libelous statements and violations of Civ. Code , §§43, 45, by Defendants, and each of them, Plaintiffs, and each of them, suffered injuries such as loss of reputation, loss of business opportunities, shame, mortification.   In addition, Plaintiffs Debbie Reynolds and Allisa Carr were terminated from their employment.

120.   The malicious and despicable conduct by Defendants, and each of them, as recited herein, Plaintiffs, and each of them, seek punitive damages, as authorized by law.

## COUNT EIGHT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

121.   Plaintiffs incorporate and restate each of the above paragraphs 1 through 120 above, as

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

if fully set forth herein.

122.    The extreme, outrageous and despicable conduct of the Defendants, and each of them, in parading the Plaintiffs, and each of them, through the train like they were criminals, calling in the police to evict them from the Train in the open presence of all the other passengers on the train, the discriminatorily humiliating and mortifying actions of the Defendants, and each of them, with deliberation and without regard to the health, safety, and well-being of Plaintiffs, and each of them, caused them severe emotional and physical distress.

123.    Any reasonable person in Plaintiffs' position would be unable to cope with such conduct and treatment by  Defendants, and each of them.

124. The acts and actions of the Defendants, and each of them, as alleged herein are malicious, oppressive, deplorable, and in conscious disregard of Plaintiffs' rights and privileges and with willful knowledge that Plaintiffs, and each of them, could suffer severe harm and emotional and mental distress.

125.    As a direct and proximate result of the extreme and outrageous conduct of the by Defendants, and each of them, Plaintiffs, and each of them, suffered severe emotional distress and other physical injuries.

### COUNT NINE
### BREACH OF CONTRACT

126.    Plaintiffs incorporate and restate each of the above paragraphs 1 through 125 above, as if fully set forth herein.

127.    Defendants, and each of them, widely advertised the Wine Train and its attractive offerings of gourmet, lunches and dinners prepared by their gourmet chefs, wines from local wineries, a fully equipped bar, the antique train ride through picturesque Napa County, private tours of select wineries, and offered discount coupons  to attract riders on their Wine Train.

128.    Plaintiffs, and each of them, accepted Defendants' offer or invitation, and purchased tickets

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

for a ride on the Wine Train on August 22, 2015.

129.   There was, thus, an express contract formed between the Defendants and the Plaintiffs, that when the eleven Plaintiffs purchased their tickets, each one of them was promised a seat on the Train for a round-trip ride between Napa and St. Helena, and quiet and peaceful enjoyment of the ride.

130.   The contract was also predicated upon a condition that the Plaintiffs would be seated together in such a configuration that would enable them to converse between themselves and discuss the merits of the assigned book for their Book Club.   Defendants, and each of them, agreed to honor Plaintiff's request and accommodate them accordingly.

131.   There was also an implied covenant in the contract that, pursuant to applicable laws, Plaintiffs, and each of them, would be treated with respect, and consideration; would not be discriminated against on the basis of race, color, age, gender or disability; not be treated disparately; not be harassed, humiliated, and publicly expelled from the Train with the help of local police.

132.   Defendants, and each of them, breached the express and implied terms of the contract, by (i) not providing them a seating configuration that was conducive to group discussions; (ii) behaving rudely and disrespectfully by towards the Plaintiffs and each of them; (iii) humiliatingly marching down Plaintiffs, even those with physical disabilities, narrow aisles; (iv) expelling Plaintiffs, and each of them, from the Train with the help of the local police; (v) not allowing them to complete the train ride for which they paid adequate consideration; and (vi) not allowing them the benefit of their bargain, all to their detriment.

133.   As a direct and proximate result of the aforementioned contract breach, and reprehensible acts and actions of the Defendants, and each of them, Plaintiffs, and each of them, have been injured and damaged according to proof.

134.   As a direct and proximate result of Defendants' breach of contract, Plaintiff Sandra Jamerson could not celebrate her birthday happily with her friends and instead was subject to trauma,

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

humiliation and outrageous discrimination based on her race, color and gender.

135.    As a direct and proximate result of Defendants' breach of contract, Plaintiff Sandra Jamerson could not, along with her friends and Book Club members, honor or toast her twin sister who perished during the 9/11 al-Qaeda attacks.

136.    As a direct and proximate result of Defendants' breach of contract, Plaintiff Kathrine Neal did not get to enjoy the Train ride she was so eagerly looking forward to.  Instead, the day was one of horror, trauma and extreme humiliation by the Defendants and each of them.

## COUNT TEN
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

137.  Plaintiffs incorporate by reference the factual allegations set forth in paragraphs 1 through 137.

138.  The agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendants to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiffs from performing any or all of the conditions of the contract that they agreed to perform, or any act that would deprive Plaintiffs of the benefits of the contract.

139.  Plaintiffs spoke with the Wine Train staff on December 1, 2014, May 12, 2015, and July 23, 2015, regarding the size of their group and the Wine Train's ability to accommodate a group of eleven. On all three occasions Wine Train staff assured Plaintiffs that the train would be conducive to their large group.

140.  However, when Plaintiffs were seated on the train, they were spread out in an "L" formation that was not conducive to group discussion.

141.  Plaintiffs were warned to "tone down [their] noise" before the train left the station, and then again shortly thereafter because of "customer complaints." Wine Train staff did not specify any actual complaints but instead based the warnings on the looks of the "face of other passengers."

142.  Instead of trying to accommodate the Plaintiffs, Wine Train staff called the police and removed Plaintiffs from the train.

143.  Plaintiffs' money did not have the same value to Defendants as that of the other patrons.

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

144.  Instead of practicing the standard deference to customers, Defendants then made defamatory statements on Facebook that Plaintiffs exhibited "verbal and physical abuse towards other guests and staff," such that "it was necessary to get our police involved."

145.  Plaintiffs performed all the duties and conditions of the agreement by purchasing the tickets and boarding the train.

146.  Defendants knew that Plaintiffs had fulfilled all their duties and conditions under the contract.

147.  Defendants breached the implied covenant of good faith and fair dealing under the agreement by removing Plaintiffs from the train intentionally, maliciously, and without probable cause, in bad faith and for reasons extraneous to the contract.

148.  Defendants further breached the implied covenant of good faith and fair dealing by failing to have any objective standards and or policies regarding the ejection of passengers, and by interfering with the Plaintiffs right to receive the benefits of the contract.  This arbitrary decision to eject plaintiffs from the train, without any objective standards, was discriminatory.

149.  As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered natural and probable consequences of wrongdoing, including continued feelings of severe emotional distress in the form of humiliation, embarrassment, mental-anguish, anxiety, stress and indignation.  Defendants' acts were done with the willful knowledge that Plaintiffs could suffer severe harm as a result thereof.   The actions of Defendants were malicious and oppressive and done in conscious disregard for the rights of the plaintiffs entitling them to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, request this Court enter judgment against Defendants, and each of them, providing the following relief:

   (a)   Compensatory damages against Defendants in whatever amount in excess of $11 million, exclusive of costs and interest, to which Plaintiffs are found to be entitled;

   (b)   Punitive/exemplary damages against Defendants in whatever amount as authorized by law and to which Plaintiffs are found to be entitled;

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.

(c)     An Order enjoining/restrict Defendants from further acts of discrimination and retaliation;

(d)     An award of reasonable attorneys' fees as authorized by law;

(e)     An award of interest as provided by law;

(f)     Any and all other remedies provided pursuant to 42 U.S.C. §§1983, 1985, 2000d et seq., ADA and Civ. Code §51 et. seq.;

(g)     Costs of suit incurred herein;

(h)     Such other and further relief as the Court deems appropriate.

**JURY TRIAL IS DEMANDED**.

November 16, 2015

Waukeen Q. McCoy, Esq.
Law Offices of Waukeen Q. McCoy
555 Montgomery Street, Suite 1100
San Francisco, CA 94103

**Attorneys for Plaintiffs,**
Lisa Johnson, Katherine Neal, Deborah Neal, Allisa Car, Dininne Neal, Sandra Jamerson, Linda Carlson, Debra Reynolds, Georgia Lewis, Briana Rosenberg, and Tira McDonald

FIRST AMENDED COMPLAINT FOR RACE, COLOR AND GENDER DISCRIMINATION, ETC.