1   Thomas P. Mazzucco, Esq., SBN 139758
    tmazzucco@mpbf.com
2   Patrick J. Wingfield, Esq., SBN 265140
    pwingfield@mpbf.com
3   Anjali Kulkarni, Esq., SBN 292999
    akulkarni@mpbf.com
4   MURPHY, PEARSON, BRADLEY & FEENEY
    88 Kearny Street, 10th Floor
5   San Francisco, CA  94108-5530
    Tel:    (415) 788-1900
6   Fax:    (415) 393-8087

7   Attorneys for Defendants
    NAPA VALLEY WINE TRAIN, INC., NOBLE
8   HOUSE HOTELS & RESORTS, LTD. DBA
    NOBLE HOUSE HOTELS & RESORTS, LTD.
9   L.P., BROOKS STREET PROPERTY
    MANAGEMENT, INC., KIM POWERS, KIRA
10  MCMANUS DEVITT, AND ANNA
    MARROQUIN

11

12                    **UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 15  LISA JOHNSON; KATHERINE NEAL; DEBORAH NEAL; ALLISA CARR; DININNE NEAL; SANDRA JAMERSON; LINDA CARLSON; DEBRA REYNOLDS; GEORGIA LEWIS; BRIANA ROSENBERG; TIRA MCDONALD, as individuals, | **Case No.:** 3:15-cv-04515-TEH |
| | **DEFENDANTS' MOTION: (1) FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e); (2) TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); AND (3) TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Plaintiffs, | |
| v. | **[Request For Judicial Notice Filed Concurrently Herewith]** |
| NAPA VALLEY WINE TRAIN, INC.; NOBLE HOUSE HOTELS & RESORTS, LTD. dba NOBLE HOUSE HOTELS & RESORTS, LTD. L.P.; BROOKS STREET PROPERTY MANAGEMENT, INC.; KIM POWERS, an individual; KIRA MCMANUS DEVITT, an individual; and ANNA MARQUINN, an individual, | **U.S. District Judge**: Hon. Thelton E. Henderson<br>**Hearing Date**:   January 11, 2016<br>**Hearing Time**:   10:00 a.m.<br>**Location**:  San Francisco Courthouse<br>        Courtroom 2, 17th Floor<br>        450 Golden Gate Ave.<br>        San Francisco, CA  94102 |
| Defendants. | |

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................3

I.   INTRODUCTION.............................................................................................................3

II.  FACTUAL AND PROCEDURAL BACKGROUND FACTS ........................................3

    A.   SUMMARY OF THE PARTIES TO THE LAWSUIT ............................................3

    B.   PLAINTIFFS' ALLEGATIONS ..............................................................................4

    C.   NAPA CREEK/NAPA RIVER FLOOD CONTROL PROJECT ............................5

    D.   PROCEDURAL BACKGROUND ..........................................................................6

III. MOTION FOR A MORE DEFINITE STATEMENT........................................................7

IV.  MOTION TO DISMISS ...................................................................................................7

    A.   STANDARD OF REVIEW ......................................................................................7

    B.   LEGAL ARGUMENT .............................................................................................8

        1.   PLAINTIFFS CANNOT STATE A CLAIM FOR RELIEF UPON WHICH RELIEF MAY BE GRANTED UNDER 42 U.S.C. § 2000D, ET SEQ. ...........................................8

            a.   Title VI Does Not Prohibit Age or Gender Discrimination. ....................9

            b.   NVWT is Not a Recipient of Federal Financial Assistance....................9

            c.   The Government Does Not Extend Federal Financial Assistance to NVWT, Brooks Street, or Noble House "as a Whole." .....................11

            d.   Plaintiffs Are Not Intended Beneficiaries of the Flood Project.............12

        2.   THE NEAL PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF UNDER THE ADA. ..............................................................................12

        3.   PLAINTIFFS CLAIM UNDER SECTION 1985(3) FAILS BECAUSE IT IS SUPPORTED BY CONCLUSORY AND MATERIALLY FALSE ALLEGATIONS. .............14

        4.   PLAINTIFFS CANNOT STATE A CLAIM UNDER 42 U.S.C. § 1983 BECAUSE DEFENDANTS DID NOT ACT UNDER THE COLOR OF STATE LAW. ...................15

            a.   Joint Action Test....................................................................................16

            b.   Symbiotic Relationship Test .................................................................17

            c.   Public Function Test...............................................................................19

            d.   Nexus Test..............................................................................................19

**TABLE OF CONTENTS**
(continued)

| | | **Page** |
|---|---|---|
| | e.   Compulsion Test .................................................................... | 20 |
| V. | MOTION TO STRIKE ........................................................................ | 20 |
| VI. | CONCLUSION ................................................................................. | 22 |

# TABLE OF AUTHORITIES

**Page**

## CASES

Adickes v. S.H. Kress & Co.,
398 U.S. 144 (1970) ................................................................................16

Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,
301 FRD 487 (C.D. Cal. 2014) .............................................................20

Arizona ex re. Goddard v. Harkins Amusement Enters., Inc.,
603 F.3d 666 (9th Cir. 2012) .................................................................12

Armstrong v. School Dist.,
597 F. Supp. 1309 (E.D. P.A. 1984) ......................................................14

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ................................................................................8

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ..............................................................................7, 8

Benavides v. State Farm Gen. Ins. Co.,
136 Cal.App.4th 1241 (2006) ................................................................21

Blum v. Yartesky,
457 U.S. 991 (1982) ..............................................................................18

Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.,
531 U.S. 288 (2001) ......................................................................... 16, 19

Brunette v. Humane Society of Ventura County,
294 F.3d 1205 (9th Cir. 2002),
cert. denied, 537 U.S. 1112 (2003) ...............................15, 16, 17, 19

Burton v. Wilmington Parking Authority,
365 U.S. 715 (1961) ....................................................................... 17, 18

Cahill v. Liberty Mut. Ins. Co.,
80 F.3d 336 (9th Cir. 1996) ....................................................................8

Castle v. Eurofresh, Inc.,
731 F.3d 901 (9th Cir. 2013) .................................................................10

Cates Const., Inc. v. Talbot Partners,
21 Cal.4th 28 (1999)...............................................................................21

Clarke v. Upton,
703 F.Supp.2d 1037 (E.D. Cal. 2010) ...................................................12

# TABLE OF AUTHORITIES
(continued)

**Page**

Collins v. Womancare,
   878 F.2d 1145 (9th Cir. 1989),
   cert. denied, 493 U.S. 1056 (1999) ................................................................. 15, 16

Dennis v. Sparks,
   449 U.S. 24 (1980) ................................................................................................16

Dobyns v. E-Systems, Inc.,
   667 F.2d 1219 (5th Cir. 1982) ....................................................................... 18, 19

Droysen v. Hansen,
   59 F.R.D. 483 (E.D. Wis. 1973) ...........................................................................14

Egan v. Mutual of Omaha Ins. Co.,
   24 Cal.3d 809 (1979)..............................................................................................21

Epileptic Foundation v. City and County of Maui,
   300 F.Supp.2d 1003 (D. Hawaii 2003) .................................................................12

Federer v. Gephardt,
   363 F.3d 754 (8th Cir. 2004) .................................................................................14

Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.,
   209 Cal.App.4th 1118 (2012) ................................................................................21

Fortyune v. American Multi-Cinema, Inc.,
   364 F.3d 1075 (9th Cir. 2004) ...............................................................................13

Garcia v. M-F Athletic Co.,
   No. CV. 11-2430 WBS GGH,
   2012 U.S. Dist. LEXIS 20411 (E.D. Cal. Feb. 17, 2012)......................................21

Gourgue v. United States,
   No. 12CV-1490-LAB,
   2013 U.S. Dist. LEXIS 60940 (S.D. Cal. April 29, 2013)....................................21

Griffin v. Breckenridge,
   403 U.S. 88 (1971) ................................................................................................14

Hodges v. Holiday Inn Select,
   2008 U.S. Dist. Lexis 2729 (E.D. Cal. Jan. 14, 2008) ........................................16

Howerton v. Gabica,
   708 F.2d 380 (9th Cir. 1983) ................................................................................16

Humwood v. City of Aurora,
   No. 12-cv-02185-RM-CBS,
   2014 U.S. Dist. LEXIS 120910 (D. Colorado July 2, 2014) ................................12

Hunter v. Up-Right, Inc.,
   6 Cal.4th 1174 (1993) ............................................................................................21

- iv -

# TABLE OF AUTHORITIES
(continued)

Page

I.R. ex rel. Nava v. City of Fresno,
  No. 1:12-CV-00558 AWI GSA,
  2012 U.S. Dist. LEXIS 126936 (E.D. Cal. Sept. 6, 2012)....................................................21

Jackson v. Metro. Edison Co.,
  419 U.S. 345 (1974) .......................................................................................................19

Karim-Panahi v. LAPD,
  839 F.2d 621 (9th Cir. 1988) .........................................................................................14

King v. Massarweh,
  782 F.2d 825 (9th Cir. 1986) .........................................................................................16

Kirtney v. Rainey,
  326 F.3d 1088 (9th Cir. 2003) .......................................................................................16

Lopez v. Smith,
  203 F.3d 1122 (9th Cir. 2000) .........................................................................................8

Marsh v. Alabama,
  326 U.S. 501 (1946) .......................................................................................................19

Mathis v. Pac. Gas & Elec. Co.,
  75 F.3d 498 (9th Cir. 1996) ...........................................................................................16

McElroy v. Tracy Unified Sch. Dist.,
  No. 2:07-cv-00086-MCE-EFB,
  2009 U.S. Dist. LEXIS 39961 (E.D. Cal. May 11, 2009) .............................................18

McHenry v. Renne,
  84 F.3d 1172 (9th Cir. 1996) ...........................................................................................7

Menchaca v. Chrysler Credit Corp.,
  613 F.2d 507 (5th Cir.),
  cert. denied, 449 U.S. 953 (1980).................................................................................16

Morse v. North Coast Opportunities,
  118 F.3d 1338 (9th Cir. 1997) .......................................................................................18

Nat'l Collegiate Athletic Ass'n v. Smith,
  525 U.S. 459 (1999) .......................................................................................................10

Peng v. Mei Chin Penghu,
  335 F.3d 970 (9th Cir. 2003) .........................................................................................16

Powell v. Workmen's Compensation Board of State of New York,
  327 F.2d 131 (2nd Cir. 1964) ........................................................................................14

Regents of University of California v. Bakke,
  438 U.S. 265 (1978) .......................................................................................................18

- v -

# TABLE OF AUTHORITIES
(continued)

Page

Rendell-Baker v. Kohn,
　457 U.S 830 (1982) ........................................................................................ 18, 19

SEC v. Sands,
　902 F. Supp. 1149 (C.D. Cal. 1995) ........................................................................20

Sliger v. Prospect Mortg., LLC,
　789 F.Supp.2d 1212 (E.D. Cal 2011) ......................................................................21

Sprewell v. Golden State Warriors,
　266 F.3d 979 (9th Cir. 2001) ................................................................................8

Sutton v. Providence St. Joseph Med. Ctr.,
　192 F.3d 826 (9th Cir. 1999) ...............................................................................20

Terry v. Adams,
　345 U.S. 461 (1953) ...........................................................................................19

United States Dep't of Transp. v. Paralyzed Veterans,
　477 U.S. 597 (1986) .................................................................................. 9, 10, 11

United Steelworkers v. Phelps Dodge Corp.,
　865 F.2d 1539 (9th Cir. 1989) .............................................................................16

Vincent v. Trend Western Technical Corp.,
　828 F.2d 563 (9th Cir. 1987) ...............................................................................19

Whittlestone Inc. v. Handi-Craft Co.,
　618 F.3d 970 (9th Cir. 2010) ..........................................................................20, 21

## STATUTES

42 U.S.C.
　§ 1983 ....................................................................................... 1, 3, 6, 16, 18
　§ 1985(3) .................................................................................... 1, 3, 6, 14, 15
　§ 2000d, *et seq.* ......................................................................... 1, 3, 6, 7, 9, 12
　§ 12181, *et seq.* .................................................................................... 6, 13
　§ 12182, *et seq.* ................................................................................ 1, 3, 13
　§ 12182(b)(2)(A) ..........................................................................................13

Air Carrier Access Act of 1986, Pub. L. No. 99-435,
　100 Stat. 1080 ..................................................................................................9

Business and Professions Code
　§ 17200, *et seq.* .............................................................................................6

City of Napa, Municipal Code
　§ 17.52.300(a)(1) ..............................................................................................5
　§ 17.52.300(a)(3) ..............................................................................................5

# TABLE OF AUTHORITIES
### (continued)

**Page**

Civil Code
   § 51, *et seq.* ..................................................................................................................6

### RULES

Federal Rules of Civil Procedure
   Rule 8(a)(2)..........................................................................................................7, 8
   Rule 12(b)(6) ..............................................................................................................1
   Rule 12(e)...............................................................................................................1, 7
   Rule 12(f) ......................................................................................................1, 20, 21

### REGULATIONS

28 Code of Federal Regulations
   § 42.102(d) ...............................................................................................................11
   § 42.102(d)(3)(i)(A) ................................................................................................11
   § 42.102(f) ............................................................................................................9, 11
   § 42.104(a) .......................................................................................................9, 11, 12
   § 42.104(b) .................................................................................................................9

### OTHER AUTHORITIES

5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (2004)
   § 1363.........................................................................................................................8

Senate Report No. 64 at 17-18, reprinted in 1988
   U.S.C.C.A.N. at 19-20 ...........................................................................................11

DEFENDANTS' MOTION: (1) FOR A MORE DEFINITE STATEMENT; (2) TO DISMISS; AND (3) TO STRIKE
Case No. 3:15-cv-04515-TEH

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on January 11, 2016 at 10:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 2 – 17th Floor of the above-captioned court, located at 450 Golden Gate Ave., San Francisco, California, Defendants NAPA VALLEY WINE TRAIN, INC. ("NVWT"), NOBLE HOUSE HOTELS & RESORTS, LTD DBA NOBLE HOUSE HOTELS & RESORTS, LTD. L.P. ("NOBLE HOUSE"), BROOKS STREET PROPERTY MANAGEMENT, INC. ("Brooks Street"), KIM POWERS, an individual, KIRA MCMANUS DEVITT, an individual, and ANNA MARROQUIN, an individual[1] (collectively, "Defendants") will and hereby do move:  (1) for a more definite statement as to the entire First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(e); (2) to dismiss Plaintiffs' First, Second, Third, and Fourth Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(6) in their entirety without leave to amend; and (3) to strike paragraph 149 of the FAC pursuant to Fed. R. Civ. P. 12(f), for the following principal reasons.

**First**, the FAC fails to properly notify Defendants of the claims with which they are charged. Consequently, the FAC is uncertain, confusing, and ambiguous as a whole.

**Second**, Plaintiffs have failed to sufficiently plead a claim under 42 U.S.C. § 2000d, *et seq.*, and they cannot do so because NVWT, Brooks Street, and Noble House are not "recipients" of Federal financial assistance nor do they operate a "program or activity" that receives Federal financial assistance.

**Third**, Plaintiffs Deborah Neal and Katherine Neal have failed to sufficiently plead a claim under 42 U.S.C. § 12182, *et seq.* because it is vague, ambiguous, and uncertain as to how Defendants precisely discriminated against these plaintiffs based on their alleged disabilities.

**Fourth**, Plaintiffs have failed to sufficiently plead a claim under 42 U.S.C. § 1985(3), and they cannot do so because it is solely supported by conclusory allegations that are predicated on the false allegation that NVWT, Brooks Street, and Noble House jointly own and operate the Wine Train.

**Fifth**, Plaintiffs have failed to sufficiently plead a claim under 42 U.S.C. § 1983, and they cannot do so because NVWT, Brooks Street, and Noble House are private parties and the alleged

---

[1] Erroneously sued as "Anna Marquinn."

1   wrongful acts in which they allegedly engaged were not performed under color of state law.

2       **Sixth**, the FAC seeks damages that are not available as a matter of law.

3       This Motion is based on this Motion, the Memorandum of Points and Authorities attached

4   hereto, the Request for Judicial Notice filed concurrently herewith, the pleadings, records, and

5   documents on file with the court, including the Complaint, such additional authority and argument as

6   may be presented in any reply brief and at the hearing on this motion, and such other matters of which

7   the court may take judicial notice.

8   Dated: November 30, 2015                    **MURPHY, PEARSON, BRADLEY & FEENEY**

9

10                                              By: _/s/ Patrick J. Wingfield, Esq._____
                                                  Thomas P. Mazzucco, Esq.
11                                                Patrick J. Wingfield, Esq.
                                                  Anjali Kulkarni, Esq.
12                                                Attorneys for Defendants
                                                  NAPA VALLEY WINE TRAIN, INC., NOBLE
13                                                HOUSE HOTELS & RESORTS, LTD. DBA NOBLE
                                                  HOUSE HOTELS & RESORTS, LTD. L.P.,
14                                                BROOKS STREET PROPERTY MANAGEMENT,
                                                  INC., KIM POWERS, KIRA MCMANUS DEVITT,
15                                                AND ANNA MARROQUIN

16

17  PJW.21000187_1.doc

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION: (1) FOR A MORE DEFINITE STATEMENT; (2) TO DISMISS; AND (3) TO STRIKE
Case No. 3:15-cv-04515-TEH

## MEMORANDUM OF POINTS AND AUTHORITIES

The definitions set forth above in the Motion are incorporated herein to avoid repetition.

## I.    INTRODUCTION

This is a civil rights action arising out of the alleged wrongful removal of Plaintiffs from a privately owned train by private actors.  The core of Plaintiffs' Complaint concerned claims for defamation and racial discrimination in violation of California's Unruh Civil Rights Act and 42 U.S.C. § 1983.  However, the Complaint contained several deficiencies.  Most notably, it:  (1) failed to adequately plead NVWT, Brooks Street, and Noble House engaged in state action to state a claim under Section 1983; (2) requested remedies unavailable as a matter of law; and (3) contained insufficient allegations to state a claim for defamation.  Consequently, Defendants filed a motion to dismiss and strike.

In response to this motion, Plaintiffs filed the FAC.  The FAC contains new factual allegations that seek to address the deficiencies highlighted by Defendants.  It also expands the scope of this lawsuit by adding three *new* claims under 42 U.S.C. § 2000d, *et seq*., 42 U.S.C. § 12182, *et seq*., and 42 U.S.C. § 1985(3) for discrimination based not only on race, but also gender, age, and disability.

Despite taking a second bite at the apple, the FAC still contains several deficiencies, most which cannot be cured.  Specifically, it fails to properly notify Defendants of the claims with which they are charged.  The use of the term "Defendants" simply will not suffice given the number of named defendants and claims pled.  Moreover, the First, Second, Third, and Fourth Claims for Relief fail to sufficiently plead a claim for relief.  Plaintiffs' strategy of pleading "everything but the kitchen sink" is nothing more than a feeble attempt to grasp at straws and must be stricken and/or dismissed by way of Defendants' instant Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND FACTS

### A.    SUMMARY OF THE PARTIES TO THE LAWSUIT

Plaintiffs consist of ten African-American women and one Caucasian woman.  (First Amended Complaint ("FAC") at ¶ 5.)  Plaintiffs are members of a book club named "Sistahs on the Reading Edge" ("Book Club").  (Ibid.)

NVWT is the sole owner and operator of a train doing business as the Napa Valley Wine Train

("Wine Train").  (Request for Judicial Notice ("RJN"), Exhibits ("Exh."), 1 – 13.)  The Wine Train operates an upscale restaurant that runs between the cities of Napa and St. Helena.  (FAC, ¶ 15.)  Noble House is a Texas corporation.  (FAC, ¶ 11.)  Brooks Street is a real estate company.  (Id. at ¶ 12.)  MARROQUIN, POWERS, and DEVITT are employees of the Wine Train.  (Id. at ¶ 19- 21.)

**B.    PLAINTIFFS' ALLEGATIONS**

On December 1, 2014, the majority of Plaintiffs purchased tickets by phone to ride the Wine Train on August 22, 2015.  (FAC, ¶ 23.)  During the call, the Wine Train was allegedly informed that members of the group had mobility issues.  (Id. at ¶ 25.)   On May 12, 2015, Plaintiffs Deborah Neal and Katherine Neal also purchased tickets to ride the Wine Train on August 22, 2015.  (Id. at ¶ 27.)  Subsequently, Deborah Neal allegedly informed the Wine Train that her mobility was restricted because of recent knee surgery.  (Id. at ¶ 28.)

On August 22, 2015, Plaintiffs boarded the Wine Train.  (FAC at ¶¶ 32, 33.)  Deborah Neal and Katherine Neal both received assistance from the other Plaintiffs to board the train.  (Id. at ¶ 32.)  After boarding, MARROQUIN admonished the group because they were too loud and "offensive to other passengers."  (Id. at ¶ 35.)  Shortly thereafter, MARROQUIN warned Plaintiffs a second time because of other passengers' complaints and her personal observation of passengers' negative reaction to Plaintiffs' tone and behavior.  (FAC, ¶ 36; Complaint ("Compl."), ¶¶ 35, 37.)   If Plaintiffs failed to comply, MARROQUIN informed the group she would "have to ask [Plaintiffs] to leave the [Wine T]rain."  (FAC, ¶ 36.)  Meanwhile, a nearby passenger complained to Plaintiffs about their noise level.  (Id. at ¶ 37.)  Due to these events, Plaintiffs felt "singled out" and apparently informed MARROQUIN they wanted off the Wine Train. (See Compl., ¶ 43.)  Shortly thereafter, Plaintiffs reversed course and told MARROQUIN they were "going to stay on the train" because of concerns about being "stranded" in St. Helena.  (Ibid.)  Following further discussions with Plaintiffs, MARROQUIN told Plaintiffs they would be escorted off the Wine Train in St. Helena.  (FAC, ¶ 38; See Compl., ¶ 44.)  A privately owned 12-passenger van was then called to drive Plaintiffs back to Napa.  (FAC, ¶ 47; Compl., ¶ 58.)

After the train arrived in St. Helena, staff from the Wine Train arrived to walk Plaintiffs to the front of the train.  (FAC., ¶¶ 42, 44.)  Plaintiffs' exit was directed and supervised by staff of the Wine Train.  (Id. at ¶¶ 42, 44; Compl., ¶¶ 47, 52.)  Upon exiting, Plaintiffs stepped onto a dirt lot where four

1   police officers were waiting to escort them off the train.  (FAC, ¶ 46; Compl., ¶ 53.)  Subsequently,
2   Plaintiffs were driven back to Napa by the privately owned van.  (Id. at ¶ 47.)

3       Meanwhile, MARROQUIN allegedly told "other passengers and the police that Plaintiffs group
4   was unruly and aggressive" and were "verbally and physically abusive."  (FAC, ¶¶ 40, 116.)

5       Subsequently, Defendants allegedly posted a statement on the Wine Train's Facebook®
6   account that referenced "verbal and physical abuse towards other guests and staff…"  (FAC, ¶ 51.)
7   POWERS and DEVITT were allegedly responsible for publishing this post.  (Id. at ¶ 51.)  This alleged
8   post was quickly "deleted" or otherwise removed from Facebook®.  (Compl. at ¶ 64.)

9       Plaintiffs now seek damages that exceed $11 million plus special damages, punitive damages,
10  attorneys' fees, costs, interest, and injunctive relief.

11  **C.    NAPA CREEK/NAPA RIVER FLOOD CONTROL PROJECT**

12      The FAC alleges "NVWT[] has received and continues to receive substantial federal funding
13  and assistance for the continued operation of the Wine Train, and for repair and maintenance of its
14  exclusively used train tracks…as part of the Napa Valley Flood Control Contract" carried out by the
15  U.S. Army Corps of Engineers ("USACE").  (FAC, ¶¶ 17, 69.)  This is a reference to the Napa
16  River/Napa Creek Flood Control Project.

17      On March 3, 1998, voters of Napa County approved Measure A, authorizing a one-half cent
18  increase in the sales tax in the county to provide necessary funding for a flood control and protection
19  project known as the Napa River/Napa Creek Flood Control Project (the "Flood Project").  (City of
20  Napa, Municipal Code § 17.52.300(a)(1); RJN, Exh. 13, p. 2-1, par. 2.1.)  The Flood Project was
21  originally authorized by Congress through the Flood Control Act of 1965 (Public Law 89-298.)  (RJN,
22  Exh. 14, p. 1-3, par. 1.4.1.)

23      The purpose of the Flood Project is to "provide an economically feasible and environmentally
24  sensitive method to protect the city and county of Napa from periodic flooding."  (RJN, Exh. 14, p. 3,
25  p. 1-2, par. 1-3.)  The Flood Project arose because of devastating floods in the city and county of Napa.
26  (City of Napa, Municipal Code § 17.52.300(a)(3); RJN, Exh. 13, p. 1-2, par. 1.5 – 1.6; RJN, Exh. 14,
27  p. 1-7, 1.7.1.)  The Flood Project also seeks "to provide protection from the computed 100-year storm
28  event in most of the city of Napa."  (RJN, Exh. 14, p. 3, p. 1-2, par. 1.3.)

The Flood Project is a partnership between the USACE, the city of Napa, and the Napa Flood Control and Water Conversation District ("District").  (RJN, Exh. 13, par. 2.1, 2.3.2, 2.3.3; RJN, Exh. 14, p 1-2, par. 1-2; see also FAC, ¶ 17.)  The USACE is responsible for the Flood Project's design, construction, and management.  (FAC, ¶ 17; RJN, Exh. 14, p 1-2, par. 1-2.)

To accommodate and implement the purpose and objectives of the Flood Project, a number of changes are required to "existing buildings, roads, bridges, underground and overhead telephone power lines water lines, sanitary sewers, natural gas lines, cable lines, drainage facilities, railroad lines and railroad crossings" located in Napa.  (RJN, Exh., 13, p. 4-1, par. 4-1.)  The Flood Project requires "new facilities for the [Wine Train] that are functionally equivalent to existing facilities." (RJN, Exh. 14, p. 2-49, par. 2.4.4.)  More specifically, the Flood Project requires the elevation, relocation, and realignment of the Wine Train's railroad tracks to accommodate the USACE'S replacement of two trestle bridges used by the Wine Train to create adequate clearance for flood water flows.  (RJN, Exh. 13, p. 4-1, par. 4.1; RJN, Exh. 14, p. 2-49-2-50, par. 2.44; see also FAC, ¶ 17.)

**D.    PROCEDURAL BACKGROUND**

Plaintiffs filed this action on October 1, 2015.  The Complaint contained seven claims for: (1) Discrimination Based on Race in Violation of the Unruh Civil Rights Act (Cal. Civ. Code § 51, et seq.; (2) Defamation; (3) Libel; (4) Racial Discrimination Under Color of State Law (42 U.S.C. 1983); (5) Intentional Infliction of Emotional Distress; (6) Breach of Contract; (7) Breach of Covenant of Good Faith and Fair Dealing; and (8) Unfair Competition (Cal. Bus. & Prof. Code § 17200, et seq.) (collectively, the "Original Claims").  (Docket No. 1.)

On October 30, 2015, Defendants filed a Motion to Dismiss and Strike. (Docket No. 13.)  On November 16, 2015, Plaintiffs filed the FAC. (Docket No. 24.)   In the FAC, Plaintiffs allege: (1) Discrimination based on Race, Color, Gender, and Age in Violation of Title VI, 42 U.S.C. § 2000d, et seq.; (2) Discrimination based on Physical Disability in Violation of Title III, 42 U.S.C. § 12181, et seq.; (3) Violation of 42 U.S.C. § 1985(3); (4) Violation of 42 U.S.C. § 1983; (5) Violation of California's Unruh Civil Rights Act; (6) Libel; (7) Slander; (8) Intentional Infliction of Emotional Distress; (9) Breach of Contract; and (10) Breach of the Implied Covenant of Good Faith and Fair Dealing (collectively, the "Claims").  (Ibid.)

1

### III.   MOTION FOR A MORE DEFINITE STATEMENT

2   "A party may move for a more definite statement of a pleading to which a responsive pleading

3   is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

4   (Fed. R. Civ. P. 12(e).)   Where there is more than one defendant and several claims for relief alleged,

5   a motion for a more definite statement is proper if the complaint fails to identify which of the several

6   defendants are responsible for the numerous claims alleged by the plaintiff.  (McHenry v. Renne, 84

7   F.3d 1172, 1174-1175 (9th Cir. 1996).)   Failing to properly label the parties as to the claims with

8   which they are charged makes it difficult for individual defendants to defend themselves. (Ibid.)

9   There are six defendants in this lawsuit and ten separate claims for relief.  However, the FAC

10   does not properly notify Defendants of the claims with which they are charged by identifying the party

11   or parties to whom each claim is directed (e.g., "against defendant Smith").   Given the number of

12   defendants, claims for relief, and breadth of the allegations, the use of the term "Defendants" in each

13   claim does not suffice.  It leaves the FAC uncertain, confusing, and ambiguous.  It also subjects

14   Defendants to unnecessary discovery.  For example, the FAC identifies NVWT as the only recipient of

15   Federal financial assistance.  (FAC, ¶ 17.)   However, the claim under 42 U.S.C. § 2000d, *et seq*.

16   utilizes the term "Defendants" and in doing so alleges all of the "Defendants" receive Federal financial

17   assistance.  (Id. at ¶ 69.)  Similarly, Plaintiffs' claim for Libel uses the term "Defendants" when

18   identifying the alleged wrongdoers.  (Id. at ¶¶ 107, 108, 111 - 113.)  However, the "General

19   Allegations" fail to allege MARROQUIN had any part in this *alleged* libelous statement.  (Id. at ¶¶ 23

20   - 66.)  For these reasons, Defendants respectfully request that Plaintiffs be ordered to file a second

21   amended complaint which specifically identifies the party or parties to whom each claim is directed.

22

### IV.   MOTION TO DISMISS

23   **A.   STANDARD OF REVIEW**

24   Under FRCP 8(a)(2), a complaint must contain "a short and plain statement of the claim

25   showing that the pleader is entitled to relief."  A motion to dismiss should be granted if this Court finds

26   Plaintiffs failed to plead "enough facts to state a claim to relief that is plausible on its face."  (Bell Atl.

27   Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007).)  This "plausibility standard … asks for

28   more than a sheer possibility that a defendant has acted unlawfully."  (Ashcroft v. Iqbal ("Iqbal"), 556

- 7 -

U.S. 662, 678 (2009) [citing <u>Twombly</u>, 550 U.S. at 556].)  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief'" and, on that basis, must be dismissed. (<u>Iqbal</u>, 556 U.S. at 679 [quoting FRCP 8(a)(2)].)

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  (<u>Iqbal</u>, 556 U.S. at 663-64.)  "[A]llegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  (<u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).)  However, this Court need not accept as true allegations in the Complaint that are no more than legal conclusions or the "'formulaic recitation of the elements of a cause of action.'" (<u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555); see also <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001) ["Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"].)  Furthermore, "[t]he court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  (<u>Id.</u>; see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1363 (2004) (same).)

If the court dismisses claims for relief within the Complaint, it must decide whether to grant leave to amend.  The Ninth Circuit has "repeatedly held" that a district court must not grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." (<u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).)  For the reasons set forth below, Plaintiffs' First, Second, Third, and Fourth Claims for Relief cannot be cured by any revision to the allegations.

## B.   LEGAL ARGUMENT

### 1.   PLAINTIFFS CANNOT STATE A CLAIM FOR RELIEF UPON WHICH RELIEF MAY BE GRANTED UNDER 42 U.S.C. § 2000D, ET SEQ.

Title VI prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving Federal financial assistance.  Specifically, Title VI provides that:

[n]o person in the United States shall, on the ground of race, color, or

- 8 -

national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

(42 U.S.C. § 2000d, 28 C.F.R. § 42.104(a).)

For four principal reasons, Plaintiffs cannot state a claim under Title VI against Defendants.

### a.   Title VI Does Not Prohibit Age or Gender Discrimination.

The caption of the FAC states the First Claim for Relief is for discrimination based on race, color, gender, and age in violation of Title VI and its enabling regulations under 28 C.F.R. § 42.104(a). Paragraph 73 of the FAC also references "discrimination based on . . . gender."  However, Title VI does not prohibit gender or age discrimination.  Instead, it only prohibits discrimination on the basis of "race, color, or national origin." (42 U.S.C. § 2000d; 28 C.F.R. § 42.104(a).)  Therefore, the First Claim for Relief cannot state a claim for discrimination based on gender or age.

### b.   NVWT is Not a Recipient of Federal Financial Assistance.

By its terms, Title VI limits its coverage to a "recipient" of Federal financial assistance.  (28 C.F.R. § 42.104(a), (b).)  At the outset, therefore, an analysis of whether any of Defendants are a "recipient" of the Federal financial assistance must be conducted.

"The term recipient means any . . . entity . . . to whom Federal financial assistance is extended, directly or through another recipient, for any program . . . but such term does not include any ultimate beneficiary under any such program." (28 C.F.R. § 42.102(f).)  In analyzing whether an entity is a recipient, it is necessary to distinguish a recipient from a beneficiary; the former is covered by Title VI while the latter is not.  (United States Dep't of Transp. v. Paralyzed Veterans, 477 U.S. 597, 606-607 (1986), superseded by statute on other grounds, Air Carrier Access Act of 1986, Pub. L. No. 99-435, 100 Stat. 1080.)

In Paralyzed Veterans, the Supreme Court addressed the issue of whether the Rehabilitation Act ("RA") applied to companies that did not receive federal funds directly.  (477 U.S. 597, 599.)  There, the plaintiff argued airlines should be subject to the RA even though they did not receive Federal financial assistance because they were "indirect recipients" of the federal aid provided to airports in the form of improved runways, taxiways, ramps, etc.  (Id. at 606.)  The Supreme Court disagreed and held the airlines were not subject to the RA simply because they gained an advantage

- 9 -

from the capital improvements and construction at the airports.  (Id. at 607.)  Consequently, while those who affirmatively choose to receive federal aid may be held liable under the RA, liability will "not extend as far as those who benefit from it," because such application to all who benefit economically from the Federal aid would yield almost "limitless coverage."  (Id. at 607-608.)  As such, to state a claim, Plaintiffs must do more than simply show a defendant benefits economically from Federal aid — they must show a defendant "affirmatively chose to receive Federal aid, and in so doing accepted concomitant responsibilities of complying with certain federal mandates…."  (Castle v. Eurofresh, Inc., 731 F.3d 901, 909 (9th Cir. 2013), citing Paralyzed Veterans, 477 U.S. at 605 [placing substantial emphasis on the "contractual nature of the receipt of federal moneys"]; see also Nat'l Collegiate Athletic Ass'n v. Smith ("NCAA"), 525 U.S. 459, 468 (1999).)

Here, it is clear that NVWT[2] does not have a direct or indirect relationship with the Federal government.  Indeed, it did not (and it is not alleged to have) voluntarily enter into a relationship (contractual or otherwise) with the Federal government; nor did it (and it is not alleged to) seek, apply for, or otherwise request Federal aid or directly receive Federal aid.  Instead, involuntary capital improvements were performed in connection with two existing railroad trestle bridges used by the Wine Train **to accommodate the purpose of the Flood Project**.

As highlighted above, the purpose of the Flood Project is to provide flood protection to the city and county of Napa and elevate concerns over past severe floods.  (RJN, Exh. 15, p. 3, p. 1-2, par. 1.3.)  The USACE was retained to manage, design, and construct this project.  (Id. at p. 1-2, par. 1.2; FAC, ¶ 17.)  Consequently, the Flood Project and funds raised and construction performed (or to be performed) by the USACE in connection therewith were not intended to directly or indirectly benefit NVWT or any specific individual or entity such as an operator of an airport (Paralyzed Veterans) or a university (NCAA) or readily identifiable group of individuals or entities.  Instead, the capital improvements funded by the Flood Project were designed to benefit the city and county of Napa as a

---

[2] Plaintiffs only contend NVWT receives Federal financial assistance.  (FAC, ¶ 17.)  This make sense because NVWT is the sole owner and operator of the Wine Train.  (RJN, Exh. 1 – 12.)  To the extent Plaintiffs contend Brooks Street and Noble House also receive Federal financial assistance through the Wine Train, Brooks Street and Noble House proffer the same arguments set forth in this section.  However, it bears mentioning Brooks Street and Noble House vehemently deny they owned, operated, or managed the Wine Train at any time referenced in the FAC.

whole and therefore all of the residents and businesses located therein.  NVWT, similar to many others in Napa, just happened to own improvements that stood in the way of achieving the purpose and objectives of the Flood Project.  Therefore, to extend coverage to NVWT would require coverage to every owner of land or improvements in the city or county of Napa affected by the Flood Project – the precise limitless coverage warned about in Paralyzed Veterans.

For these reasons, NVWT cannot be deemed a "recipient" as defined in 28 C.F.R. § 42.102(f).

### c.   The Government Does Not Extend Federal Financial Assistance to NVWT, Brooks Street, or Noble House "as a Whole."

By its terms, 28 C.F.R. § 42.104(a) limits its coverage to a "program or activity receiving Federal financial assistance."  Thus, Section 42.104(a) requires an analysis of whether Defendants operate a "program or activity" that receives Federal financial assistance.

The term "program or activity" is defined to include certain private entities.  (28 C.F.R. § 42.102(d).)  Section 42.102(d) provides that "[t]he terms program or activity and program" only extend to private corporations "if assistance is extended to such corporation . . . **as a whole**."  (28 C.F.R. § 42.102(d)(3)(i)(A) (bold emphasis added).)  Federal financial assistance extended to a corporation "as a whole" refers to situations where the corporation receives general assistance that is not designated for a specific, narrow purpose.  (Senate Report No. 64 at 17-18, reprinted in 1988 U.S.C.C.A.N. at 19-20.)  For example, "Federal financial assistance to the Chrysler Company for the purpose of preventing the company from going bankrupt would be an example of assistance to a corporation 'as a whole.'"  (Ibid.)

Here, the funds used for the capital improvements identified above were for the specific, narrow purpose of achieving and accommodating the Flood Project's purpose and objective to provide flood protection to the city and county of Napa as a whole.  They were not requested by the Wine Train, nor were they provided as a means of general assistance or to achieve the Wine Train's central or primary purpose of operating a privately owned restaurant.  The capital improvements themselves as to the Wine Train were also very narrow and specific, e.g., replacement of two existing railroad trestle bridges.  For these reasons, Federal financial assistance was not extended to NVWT "as a whole."

#### d.      Plaintiffs Are Not Intended Beneficiaries of the Flood Project.

To state a claim for damages pursuant to Title VI, a plaintiff must allege the defendant(s): (1) engaged in racial discrimination; and (2) received Federal financial assistance.  (Clarke v. Upton, 703 F.Supp.2d 1037, 1050 (E.D. Cal. 2010), quoting Epileptic Foundation v. City and County of Maui, 300 F.Supp.2d 1003, 1011 (D. Hawaii 2003).)  To survive a motion to dismiss, Plaintiffs must also come forward with well-plead facts that plausibly show:  (1) "[they are] an intended beneficiary of the federally-funded program the [D]efendants . . . participated in,' . . . and (2) that the [D]efendant[s] intentionally discriminated against [them] in violation of the statute."  (Ibid; Humwood v. City of Aurora, No. 12-cv-02185-RM-CBS, 2014 U.S. Dist. LEXIS 120910 * 38 (D. Colorado July 2, 2014).)  Here, the alleged Federally-funded program at issue is the Flood Project.  (FAC, ¶ 17.)  Although Plaintiffs allege NVWT receives federal aid from the Flood Project, they fail to allege they are an intended beneficiary, applicant for, or participant of the Flood Project.  Nor can they because the purpose of the Flood Project is to provide flood protection to the city and county of Napa.

For the reasons set forth above, Plaintiffs cannot state a claim under 42 U.S.C. § 2000d, *et seq.*, 28 C.F.R. § 42.104(a).  Therefore, Defendants respectfully request that the court dismiss the First Claim for Relief in its entirety without leave to amend.

#### 2.      THE NEAL PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF UNDER THE ADA.

Plaintiffs' Second Claim for Relief is under Title III of the American with Disabilities Act ("ADA").  Title III provides in relevant part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  A plaintiff in a Title III ADA claim must prove three elements in order to prevail: (1) that plaintiff is disabled within the meaning of the ADA; (2) that defendant owns, leases, or operates a place of public accommodation; and (3) that plaintiff was denied public accommodation by the defendant due to his or her disability.  (Arizona ex re. Goddard v. Harkins Amusement Enters., Inc., 603 F.3d 666, 670 (9th Cir. 2012).)  "Discrimination" can be established in one of several ways, including:  (1) by implementing eligibility criteria that

screens out an individual with a disability; (2) a failure to make reasonable modifications in policies, practices, and procedures that deny equal access to individuals with disabilities, unless a fundamental alteration would result in the nature of the goods and services provided; (3) a failure to furnish auxiliary aids when necessary to ensure effective communication, unless an undue burden or fundamental alteration would result; and (4) a failure to remove barriers (architectural, communication, and transportation) in existing facilities where readily achievable.  (42 U.S.C. § 12182(b)(2)(A).)

Here, Plaintiffs Deborah Neal and Katherine Neal (the "Neal Plaintiffs") allege Defendants violated 42 U.S.C. §§ 12181 and 12182 because "[t]hey did nothing to accommodate their physical disability or help them" board the train, "navigate" the path of travel once aboard, or exit the train. (FAC, ¶¶ 82, 83.)  This follows two alleged phone calls where the reservation office of the Wine Train was allegedly informed members of the Book Club had mobility restrictions.  (Id. at ¶¶ 25, 28.)  Based on these allegations, *it appears* the Neal Plaintiffs allege Defendants violated 42 U.S.C. §§ 12181 and 12182 because they discriminated against them under Section 12182(b)(2)(A)(ii) and/or (iv). However, these claims fail for the following three principal reasons.

First, Section 12181 sets forth the definitions that apply to Section 12182, *et seq*.  As such, there can be no violation of Section 12181.

Second, the FAC does not allege facts that explain what modification was requested by the Neal Plaintiffs (if any).  It also does not allege why that modification was reasonable and necessary to accommodate the Neal Plaintiffs' alleged disability.  These allegations are required to sufficiently state a claim of failing to modify policies or practices to accommodate a person with a disability under Section 12182(b)(2)(A)(ii).  (Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1082 (9th Cir. 2004).)

Third, the FAC fails to allege what barriers (if any) required removal within the historic Wine Train, whether that removal is readily achievable, or what alternative to barrier removal is readily achievable.  Without this information, Defendants cannot adequately defend themselves.

For these reasons, the FAC fails to state a claim under 42 U,S,C. § 12182, *et seq*.  Therefore, Defendants respectfully request that the court dismiss the Second Claim for Relief in its entirety without leave to amend.

3. **PLAINTIFFS' CLAIM UNDER SECTION 1985(3) FAILS BECAUSE IT IS SUPPORTED BY CONCLUSORY AND MATERIALLY FALSE ALLEGATIONS.**

To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must allege: (1) conspiracy; (2) for the purpose of depriving another of equal protection of laws or of equal privileges and immunities under laws; (3) an act done in furtherance of conspiracy; and (4) injury to person or property or deprivation of legal rights.  (Federer v. Gephardt, 363 F.3d 754, 757-758 (8th Cir. 2004).)  A claim under this section also requires proof of a class-based animus.  (Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).)

Conspiracy is an essential element of a claim under Section 1985(3).  Consequently, "[c]onclusory allegations of conspiracy, without specification of the agreement forming the conspiracy, are insufficient" to state a claim under Section 1985(3).  (Droysen v. Hansen, 59 F.R.D. 483, 484 (E.D. Wis. 1973), citing Powell v. Workmen's Compensation Board of State of New York, 327 F.2d 131 (2nd Cir. 1964).)  Plaintiffs must state specific facts to support the existence of the alleged conspiracy.  (Karim-Panahi v. LAPD, 839 F.2d 621, 626 (9th Cir. 1988).)  The allegations must describe the membership, formulation, and purpose of the alleged conspiracy and how, why, or when the conspiracy came into existence.  (Armstrong v. School Dist., 597 F. Supp. 1309, 1313 (E.D. P.A. 1984).)

Here, Plaintiffs' conspiracy claim boils down to a single allegation that states:

> [NVWT, Brooks Street, and Noble House] espoused and promulgated discriminatory policies and practices throughout the operations of the Wine Train and conspired to deprive minorities, seniors, disabled passengers and other citizens of the United States of their civil rights, as alleged herein.

(FAC, ¶ 89.)

This allegation rests upon a separate conclusory allegation that NVWT, Brooks Street, and Noble House "jointly own and operate" the Wine Train. (FAC, ¶ 13.)  However, in reality, the Wine Train is solely owned and operated by NVWT.  (RJN, Exh. 1-12.)  If the Wine Train was jointly owned or operated by NVWT, Brooks Street, and Noble House, Brooks Street's and Noble House's names would also be listed on the licenses and permits attached as Exhibits 1 through 12 to the RJN.  This helps explain why Plaintiffs' joint ownership/operation allegation is pled on information and

- 14 -

1   belief.

2       Even if they did jointly own and operate the Wine Train (which Defendants deny), the single

3   allegation highlighted above is precisely the conclusory allegation that the authority cited above deems

4   insufficient to state a claim under Section 1985(3).  Indeed, the FAC fails to allege any facts that

5   support NVWT, Brooks Street, and Noble House agreed to any sort of conspiracy.  For example, it

6   fails to include any factual allegations that provide:  (1) what policies and practices were precisely

7   promulgated; (2) how, when, and why the conspiracy came into existence; and (3) the terms of the

8   agreement.  It also fails to articulate how the objectives of the policies and practices were to be carried

9   out.  This is a fundamental flaw because the alleged independent wrongdoing (i.e., alleged wrongful

10  removal of Plaintiffs from the Wine Train) resulted from the decision of a single female employee that

11  was in response to a very factually-specific set of circumstances.  (FAC, ¶¶ 4-46.)  Thus, the FAC must

12  (but does not) include any factual allegations that links this decision and set of circumstances to a pre-

13  arranged conspiracy between NVWT, Brooks Street, and Noble House to deprive "minorities, seniors,

14  disabled passengers, and other citizens of the United States of their civil rights . . . ."

15      For these reasons, the FAC fails to state a claim under Section 1985(3).  Therefore, Defendants

16  respectfully request that the court dismiss the Third Claim for Relief in its entirety without leave to

17  amend.

18      **4.    PLAINTIFFS CANNOT STATE A CLAIM UNDER 42 U.S.C. § 1983 BECAUSE**
        **DEFENDANTS DID NOT ACT UNDER THE COLOR OF STATE LAW.**
19

20      NVWT, Noble House, and Brooks Street are private entities.  (FAC, ¶¶ 10, 11, 12.)  In order to

21  sufficiently plead a violation of Section 1983, Plaintiffs must therefore plead facts from which it may

22  be inferred NVWT, Brooks Street, and/or Noble House deprived Plaintiffs of a right secured by the

23  Constitution and acted under color of state law.  (See Collins v. Womancare, 878 F.2d 1145, 1147 (9th

24  Cir. 1989), cert. denied, 493 U.S. 1056 (1999).)  "Whether a private party engaged in state action is a

25  highly factual question . . . Crucial is the nature and extent of the relationship between [NVWT,

26  Brooks, and/or Noble House] and [the government]."  (Brunette v. Humane Society of Ventura

27  County, 294 F.3d 1205, 1209 (9th Cir. 2002), cert. denied, 537 U.S. 1112 (2003).)

28      In determining whether a private entity has acted under color of state law, federal courts have

articulated several distinct tests, including the "joint action" test, "public function" test, "nexus" test, "compulsion" test, and "symbiotic relationship" test.  (Kirtney v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003); Brunette v. Humane Society of Ventura County, 294 F.3d 1205, 1211 (9th Cir 2002); Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288, 296 (2001).)  For the reasons set forth below, Plaintiffs have failed to sufficiently plead facts in the FAC from which it may be plausibly inferred that NVWT, Brooks Street, and/or Noble House engaged in state action to state a claim under Section 1983.

**a.      Joint Action Test**

The "joint action" test examines whether private actors are "willful participants" in joint action with the government or its agents.  (Brunette, 294 F.3d 1205, 1210 (9th Cir. 2002).)  With respect to the joint action test, Brunette explains:

> To be engaged in joint action, a private party must be a 'willful participant' with the State or its agents in an activity that deprives others of constitutional rights.  [Dennis v. Sparks, 449 U.S. 24, 27 (1980)] A private party is liable under this theory, however, only if its particular actions are 'inextricably intertwined' with those of the government. Mathis v. Pac. Gas & Elec. Co., 75 F.3d 498, 503 (9th Cir. 1996); Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989) (necessitating a showing of "substantial cooperation" between the private party and the State).] A conspiracy between the State and a private party to violate another's constitutional rights may also satisfy the joint action test.  [See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970); Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir. 1983); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1546-47 (9th Cir. 1989) (en banc).

Plaintiffs allege their removal from the Wine Train was the result of a "joint official action of the police."  (FAC, ¶ 95.)  However, a single request for the police to perform their peace-keeping functions is insufficient to make a private party a "joint actor" with the state for Section 1983 purposes. (See Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 510-13 (5th Cir.), cert. denied, 449 U.S. 953 (1980); Hodges v. Holiday Inn Select, 2008 U.S. Dist. Lexis 2729 (E.D. Cal. Jan. 14, 2008); Peng v. Mei Chin Penghu, 335 F.3d 970, 980 (9th Cir. 2003), citing King v. Massarweh, 782 F.2d 825, 828-829 (9th Cir. 1986), and Howerton v. Gabica, 708 F.2d 380, 385 (9th Cir. 1983).)

Here, the FAC lacks any facts that demonstrate the officers' participation in the removal of Plaintiffs from the Wine Train was anything other than for peace-keeping purposes.  The officers did

- 16 -

board the train and order Plaintiffs off.  (FAC, ¶¶ 35 – 38.)  They also did not compel, encourage, or influence the decision to remove Plaintiffs from the Wine Train.  (Ibid.)  That decision was made by MARROQUIN independent of the police; analytically an expression of private will.  (Id. at ¶¶ 35 – 38.)  The officers also did not:  (1) order, compel, or influence the manner or means of how Plaintiffs disembarked from the Wine Train (Id. at ¶¶ 41, 42, 44); (2) transport Plaintiffs back to Napa (Id. at ¶¶ 46.); or (3) conduct an investigation or interview any witnesses (Id. at ¶ 96).  In fact, the officers did not have any interaction whatsoever with Plaintiffs until they were physically off of the train.  (Id. at ¶ 46; Compl. ¶ 53.)  The officer's participation was limited to simply "escort[ing]" Plaintiffs off of the train.  (FAC, ¶¶ 38, 46.)  Based on this minimal participation, Defendants' alleged wrongful removal of Plaintiffs from the Wine Train cannot be said to be: (1) part of a conspiracy with the government (nor is one alleged); (2) "inextricably intertwined" with the government; or (3) achieved with the "substantial cooperation" of the government.

For these reasons, the FAC fails to sufficiently plead facts from which it may be plausibly inferred that NVWT, Brooks Street, and/or Noble House acted under color of state law pursuant to the "joint action" test.

**b.    Symbiotic Relationship Test**

As explained in Brunette, in a "symbiotic relationship:"

> [T]he government has 'so far insinuated itself into a position of interdependence (with a private entity) that it must be recognized as a joint participant in the challenged activity.' Burton, 365 U.S. at 725 … In Burton, for example, the Supreme Court found state action on the part of a privately-owned restaurant which refused to serve African-American customers.  Id. at 716 . . . The restaurant was located in a public parking garage, benefitted from the Parking Authority's tax exemption and maintenance of the premises, and in turn, provided the Parking Authority with the income it needed to maintain fiscal viability.  Id. at 719-20. . . . Although the Parking Authority had no part in the restaurant's discriminatory policies, the Court found that its relationship was one of interdependence; the Parking Authority had placed its power, property, and prestige behind the restaurant's discrimination, and thereby had become a joint participant in that discrimination.  Id., at 725.

> Burton teaches that substantial coordination and integration between the private entity and the government are the essence of a symbiotic relationship. Often significant financial integration indicates a symbiotic relationship . . . For example, if a private entity, like the restaurant in Burton, confers significant financial benefits indispensable to the government's 'financial success,' then a symbiotic relationship may

> exist . . . A symbiotic relationship may also arise by virtue of the government's exercise of primary control over the private party's actions. See Dobyns v. E-Systems, Inc., 667 F.2d 1219, 1226-27 (5th Cir. 1982) (finding symbiotic relationship where the government controlled a private peacekeeping force engaged in government-directed field mission in the Sinai Peninsula).

The FAC alleges the "NVWT[] has received and continues to receive substantial federal funding and assistance for the continued operation of the Wine Train, and for repair and maintenance of its exclusively used train tracks . . . as part of the Napa Valley Flood Control Contract" carried out by the USACE.  (FAC, ¶ 17.)  This is a clear reference to the Flood Project.  The Flood Project's purpose and objective was/is to provide flood protection to the city and county of Napa as a whole. Thus, the funding and construction of the capital improvements to the Wine Train's tracks was not to assure the continued operation of the Wine Train.  At any rate, the receipt of money from the government does not convert a private corporation into a state actor.  (Regents of University of California v. Bakke, 438 U.S. 265, 384, n. 3 (1978) ["This Court has never held that the mere receipt of federal or state funds is sufficient to make the recipient a federal or state actor."]; Morse v. North Coast Opportunities, 118 F.3d 1338, 1341 (9th Cir. 1997); Rendell-Baker v. Kohn, 457 U.S 830, 840 (1982); Blum v. Yaretsky, 457 U.S. 991, 1011 (1982); McElroy v. Tracy Unified Sch. Dist., No. 2:07-cv-00086-MCE-EFB, 2009 U.S. Dist. LEXIS 39961 at 8-9 (E.D. Cal. May 11, 2009) ["The fact that a private entity receives governmental funding, and has to comply with governmental regulation, is not enough, in and of itself, to constitute the action required to state a viable claim under § 1983."].)

Outside of the Flood Project, the FAC fails to plausibly infer that the Wine Train or NVWT, Brooks Street, or Noble House have any relationship whatsoever with the government.  For example, the FAC fails to allege the Wine Train, like the restaurant in Burton, provides the government with any assistance or specific benefit (financial or otherwise) that is indispensable to the government's financial success.  It also does not allege the government:  (1) derives any specific benefit from the challenged conduct; (2) compelled or influenced the removal of Plaintiffs from the Wine Train or the publishing of the alleged defamatory statements; or (3) has any power, control, influence, or authority over the Wine Train's operations, management, policies, or personnel matters.

For these reasons, the FAC fails to sufficiently plead facts from which it may be inferred that

- 18 -

1   NVWT, Brooks Street, and/or Noble House acted under color of state law pursuant to the "symbiotic

2   relationship" test.

3                    c.       **Public Function Test**

4          The "public functions" test examines whether "the private actor performs functions

5   traditionally the exclusive prerogative of the State." (Brunette; citing Rendell-Baker v. Kohn, 457 U.S.

6   830, 840 (1982).)   Private activity becomes a "public function" only if that activity has been

7   "traditionally the exclusive prerogative of the State." (Rendell-Baker v. Kohn, 457 U.S. 30, 842

8   (1982) [quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 353 (1974)]; see also Vincent v. Trend

9   Western Technical Corp., 828 F.2d 563 (9th Cir. 1987) [finding repair of fighter jets a traditional

10  function of the government, but not one of its exclusive prerogatives].)  Examples of a private activity

11  becoming a public function include if private actors hold elections (Terry v. Adams, 345 U.S. 461, 484

12  (1953)), govern a town (Marsh v. Alabama, 326 U.S. 501, 507-09 (1946)), or serve as an international

13  peace-keeping force (Dobyns, 667 F.2d at 1219).

14         Like the Complaint, the FAC fails to allege any facts that NVWT, Brooks Street, and/or Noble

15  House engaged in an activity that is traditionally the function of or reserved to the government.  It also

16  does not allege the Wine Train performs a public function.  This makes sense because it is a privately-

17  held and operated business that operates a restaurant.  Accordingly, the FAC fails to sufficiently plead

18  facts from which it may be plausibly inferred that NVWT, Brooks Street, and/or Noble House acted

19  under color of state law pursuant to the "public function" test.

20                   d.       **Nexus Test**

21         The nexus tests examines whether "there is [] such a close nexus between the State and the

22  challenged action that the seemingly private behavior may be fairly treated as that of the State itself."

23  (Brentwood, 531 U.S. at 295 (internal quotations omitted).)

24         Here, the only alleged links between the government and NVWT, Brooks Street, and Noble

25  House is through the Flood Project and the police officer's interaction with Plaintiffs following their

26  removal from the Wine Train.  However, the Flood Project has nothing to do with the alleged wrongful

27  removal of Plaintiffs from the Wine Train.  In addition, the officer's participation was minimal at best.

28  The decision to remove Plaintiffs was made by MARROQUIN independent of the government.  The

                                                - 19 -

1   officers did not order, compel, influence, or coerce the Wine Train to remove Plaintiffs therefrom.  In

2   fact, Plaintiffs did not have any interaction whatsoever with the officers until they were physically off

3   of the train.  Thus, it cannot be said "there is such a close nexus between the State and [alleged

4   wrongful removal of Plaintiffs from the Wine Train] that the seemingly private behavior may be fairly

5   treated as that of the State itself."

6        **e.** **Compulsion Test**

7      The compulsion test considers whether the coercive influence or "significant encouragement"

8   of the state effectively converts a private action into a government action.  (See generally, Sutton v.

9   Providence St. Joseph Med. Ctr., 192 F.3d 826, 836-837 (9th Cir. 1999) [canvassing applications of the

10  compulsion test involving the actions of private parties required under law or regulation].)

11     Here, as highlighted above, the Wine Train operates independently of the government.  There

12  are no allegations in the FAC that the government ordered, compelled, influenced, or coerced the

13  alleged wrongful acts complained of in the FAC.   In fact, Plaintiffs admit they did not have any

14  interaction whatsoever with the officers until they were physically off of the train.  The officers'

15  minimal participation was solely for peace-keeping purposes.  Accordingly, the FAC fails to

16  sufficiently plead facts from which it may be plausibly inferred that NVWT, Brooks Street, and/or

17  Noble House acted under color of state law pursuant to the "public function" test.

18     In conclusion, the FAC fails to state a claim under Section 1983.  Therefore, Defendants

19  respectfully request that the court dismiss the Fourth Claim for Relief in its entirety without leave to

20  amend.

21        **V.** **MOTION TO STRIKE**

22     Before responding to a pleading, a party may move to strike any "insufficient defense or any

23  redundant, immaterial, impertinent or scandalous matter."   (FRCP 12(f); see Whittlestone Inc. v.

24  Handi-Craft Co., 618 F.3d 970, 973-974 (9th Cir. 2010).)  As with motions to dismiss, the grounds for

25  a motion to strike must appear on the face of the Complaint, or from matters that the court may

26  judicially notice.  (SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995); Amini Innovation Corp.

27  v. McFerran Home Furnishings, Inc., 301 FRD 487, 489-490 & fn. 1 (C.D. Cal. 2014).)

28     Defendants acknowledge that Whittlestone prohibits the use of Rule 12(f) to strike damages

DEFENDANTS' MOTION: (1) FOR A MORE DEFINITE STATEMENT; (2) TO DISMISS; AND (3) TO STRIKE
Case No. 3:15-cv-04515-TEH

that are unavailable as matter of law.  (See Whittlestone Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010.)  "However, the law remains unclear in California" when a plaintiff seeks "damages [that] are 'merely a remedy,' and not an independent cause of action.  (Gourgue v. United States, No. 12CV-1490-LAB, 2013 U.S. Dist. LEXIS 60940, * 7-8 (S.D. Cal. April 29, 2013), citing Garcia v. M-F Athletic Co., No. CV. 11-2430 WBS GGH, 2012 U.S. Dist. LEXIS 20411 *13 n.4 (E.D. Cal. Feb. 17, 2012).)  "Even after the Whittlestone holding, district courts in California have approved the use of 12(f) to strike damages that are unavailable as a matter of law."  (Gourgue v. United States, No. 12CV-1490-LAB, 2013 U.S. Dist. LEXIS 60940, * 8 (S.D. Cal. April 29, 2013); I.R. ex rel. Nava v. City of Fresno, No. 1:12-CV-00558 AWI GSA, 2012 U.S. Dist. LEXIS 126936, * 5 (E.D. Cal. Sept. 6, 2012); Susilo v. Wells Fargo Bank, N.A., 796 F.Supp.2d 1177, 1196 (C.D. Cal. 2011).)  This makes sense because the function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  (Whittlestone, Inc., v. Handi-Craft Co., supra, 618 F.3d at 973.)  As such, a motion to strike is appropriate if it "will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues."  (Sliger v. Prospect Mortg., LLC, 789 F.Supp.2d 1212, 1216 (E.D. Cal 2011).)

Plaintiffs seek emotional distress and punitive damages under their Tenth Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing.  (FAC, ¶ 149.)  However, tort damages, including punitive damages, are not available for breach of the covenant of good faith and fair dealing because the covenant is a contract term that is implied to carry out the parties' express agreement.  (Cates Const., Inc. v. Talbot Partners, 21 Cal.4th 28, 61 (1999); Food Safety Net Servs. v. Eco Safe Sys. USA, Inc., 209 Cal.App.4th 1118, 1127 (2012).)  An exception to this general rule has been recognized in the context of insurance contracts.  (See e.g., Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1180 (1993); Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 818 (1979); Benavides v. State Farm Gen. Ins. Co., 136 Cal.App.4th 1241, 1248 (2006).)  However, this is not an action against an insurer for bad faith.  Instead, this action concerns an alleged breach of an ordinary commercial contract.  Accordingly, Plaintiffs may not recover emotional distress or punitive damages under their Tenth Claim for Relief.

For these reasons, Defendants respectfully request that the court to issue an order striking

1   paragraph 149 in its entirety without leave to amend.

2                               **VI.    CONCLUSION**

3          For the foregoing reasons, Defendants respectfully request that the court:  (1) order Plaintiffs to

4   file a second amended complaint that identifies the party or parties to whom each claim is directed;

5   (2) dismiss Plaintiffs' First, Second, Third, and Fourth Claims for Relief without leave to amend; and

6   (3) strike paragraph 149 without leave to amend.

7

8   Dated: November 30, 2015                    **MURPHY, PEARSON, BRADLEY & FEENEY**

9

10                                         By: _/s/ Patrick J. Wingfield, Esq._____
                                              Thomas P. Mazzucco, Esq.
11                                            Patrick J. Wingfield, Esq.
                                              Anjali Kulkarni, Esq.
12                                            Attorneys for Defendants
                                              NAPA VALLEY WINE TRAIN, INC., NOBLE
13                                            HOUSE HOTELS & RESORTS, LTD. DBA NOBLE
                                              HOUSE HOTELS & RESORTS, LTD. L.P.,
14                                            BROOKS STREET PROPERTY MANAGEMENT,
                                              INC., KIM POWERS, KIRA MCMANUS DEVITT,
15                                            AND ANNA MARROQUIN

16

17

18  PJW.20992755.doc

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION: (1) FOR A MORE DEFINITE STATEMENT; (2) TO DISMISS; AND (3) TO STRIKE
Case No. 3:15-cv-04515-TEH

**CERTIFICATE OF SERVICE**

I, Hannah K. Lincecum, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is 88 Kearny Street, 10th Floor, San Francisco, California 94108-5530.

On November 30, 2015, I served the following document(s) on the parties in the within action:

**DEFENDANTS' MOTION: (1) FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e); (2) TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); AND (3) TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

| ✓ | **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and Local Rules, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 30, 2015, I checked the CM/ECF docket for this proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below: |
|---|---|

| | |
|---|---|
| Waukeen L. McCoy<br>Law Offices of Waukeen Q. McCoy<br>555 Montgomery Street, Suite 1100<br>San Francisco, CA 94103<br>mail@mccoyslaw.com<br>wqm@mccoyslaw.com | Attorney For Plaintiffs<br>LISA JOHNSON; KATHERINE NEAL;<br>DEBORAH NEAL; ALLISA CARR;<br>DININNE NEAL; SANDRA JAMERSON;<br>LINDA CARLSON; DEBRA REYNOLDS;<br>GERGIA LEWIS; BRIANA ROSENBERG; and<br>TIRA MCDONALD |

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on November 30, 2015.

By: _/s/ Hannah K. Lincecum_
Hannah K. Lincecum