UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA JOHNSON, et al., | Case No.  15-cv-04515-TEH |
| Plaintiffs, | **ORDER DENYING DEFS.'** |
| | **REQUEST FOR MORE DEFINITE** |
| v. | **STATEMENT; GRANTING IN PART** |
| | **AND DENYING IN PART DEFS.'** |
| NAPA VALLEY WINE TRAIN, INC., | **MOTION TO DISMISS; GRANTING** |
| et al., | **DEFS.' MOTION TO STRIKE; AND** |
| Defendants. | **DENYING PARTIES' REQUESTS** |
| | **FOR JUDICIAL NOTICE** |

This matter came before the Court on January 25, 2016 for a hearing on

Defendants' Motion for More Definite Statement, Motion to Dismiss, and Motion to Strike

(Docket No. 27); Defendants' Request for Judicial Notice (Docket No. 27-1); and

Plaintiffs' Request for Judicial Notice (Docket No. 30).  After carefully considering the

parties' written and oral arguments, and for the reasons set forth below, the Court hereby

DENIES Defendants' Motion for More Definite Statement, GRANTS IN PART and

DENIES IN PART Defendants' Motion to Dismiss, GRANTS Defendants' Motion to

Strike, and DENIES the parties' Requests for Judicial Notice.

**BACKGROUND**

The following factual allegations are taken from Plaintiffs' First Amended

Complaint ("FAC") and are therefore accepted as true for the purposes of this motion.  *See*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Plaintiffs are eleven women, ten of whom are African-American, belonging to a

book club called "Sistahs on the Reading Edge."  FAC ¶ 5 (Docket No. 24).  The group

purchased tickets to ride the Napa Valley Wine Train ("Wine Train") for the book club's

annual Napa outing on August 22, 2015.  *Id.* ¶¶ 23, 26.  The president of the book club,

Plaintiff Lisa Johnson, made reservations by phone for nine of the book club's members on

December 1, 2014.  *Id.* ¶¶ 5, 24-25.  While making the reservations, she requested group

seating to accommodate their large group, and stated that some of the group members have "mobility restrictions." *Id.* ¶ 25.  The reservations agent assured her that "Wine Train would be happy to accommodate the group and their requests and requirements." *Id.* ¶ 25. Plaintiff Deborah Neal made the final two reservations, for herself and her 85-year-old mother-in-law, Plaintiff Katherine Neal, by phone on May 12, 2015.  *Id.* ¶ 27.  At this time, she reiterated the size of the group and that the Wine Train should "expect a noise level commensurate with eleven people discussing the merits of the book assigned for reading, while eating and drinking wine and having fun." *Id.*  As with the previous phone call, the reservations agent assured Plaintiff Neal that the group would be accommodated and that "it was normal for the [Wine] Train to have various noisy groups." *Id.*  Plaintiff Neal contacted the Wine Train a third time, on July 23, 2015, to confirm their reservations and to inform the reservations agent "that she underwent knew [sic] surgery recently and that her mobility was restricted." *Id.* ¶ 28.

When Plaintiffs arrived at the Wine Train on August 22, 2015, there were no attendants present to help the Neal Plaintiffs board the steps to train.  *Id.* ¶ 32.  Instead, Plaintiffs had to assist the mobility-impaired members of their group in boarding the train themselves.  *Id.*  Plaintiffs also discovered that they were not given group seating as they were promised, but were instead seated in the "Bar Car," which was the last car on the train, in an "L" shaped configuration that made group discussion difficult.  *Id.* ¶ 33.

Before the Wine Train left Napa, Defendant Anna Marroquin, the Wine Train's maître d'hotel, "approached the group and admonished them saying 'tone down your noise level because you're being offensive to other passengers.' " *Id.* ¶ 35.  When asked which passengers were offended, Marroquin refused to answer.  *Id.*  Plaintiff Lisa Johnson told Marroquin that the group would try to "tone it down," but that it would be difficult given the large group and the seating arrangement.  *Id.*

Marroquin approached the group again about 45 minutes into the train ride, telling them that they were offending other passengers and that she would have to ask them to leave the Wine Train if they didn't "tone it down." *Id.* ¶ 36.  When asked again whom

2

United States District Court
Northern District of California

Plaintiffs were offending, Marroquin responded that she could "see it on the face of other passengers when [Plaintiffs] laugh out loud." *Id.* Plaintiff Johnson asked neighboring passengers if the group was offending them, and the passengers responded that they were actually enjoying the company of the book club. *Id.* ¶ 37. However, one unidentified Caucasian woman seated nearby yelled to them, "This is not a bar!" *Id.* Plaintiff Johnson then asked Marroquin why their group was being singled out, when they were not any louder than other passengers;[1] Marroquin responded only that the police were waiting to escort them off the Wine Train when it arrived in St. Helena. *Id.* ¶ 38.

When the train arrived in St. Helena, Plaintiffs were told to stay where they were while the other passengers were escorted to the dining cars for lunch. *Id.* ¶ 41. The Wine Train staff then walked Plaintiffs through all six train cars to exit the train,[2] while some seated passengers snickered at them. *Id.* ¶ 42. The Neal Plaintiffs had physical difficulty walking through the train, but were given no assistance by Wine Train staff, and were instead told "to hurry up" despite their mobility limitations. *Id.* ¶ 44. Upon exiting the train, four police officers – one Wine Train rail officer and three officers from the St. Helena Police Department – spoke to Plaintiffs outside for about twenty minutes and then escorted them to a van to be driven back to Napa. *Id.* ¶¶ 46-47. The entire ordeal was humiliating and distressing for Plaintiffs. *Id.* ¶¶ 45, 48.

Shortly after the incident, a comment was posted on the Wine Train Facebook page,[3] which stated in part: "[F]ollowing verbal and physical abuse toward other guests and staff, it was necessary to get our police involved . . . . Many groups come on board and celebrate. When those celebrations impact our guests, we do intervene." *Id.* ¶ 51.

---

[1]     Plaintiffs believe that on the same day, there was a group of Caucasian men on the Wine Train who were "completely inebriated, boisterous, and extremely loud." *Id.* ¶ 50. Though these men were the subject of several complaints, they were not made to leave the Wine Train as Plaintiffs had been. *Id.*

[2]     According to Plaintiffs, there was an exit on the Bar Car in which they were seated, but they were not allowed to exit from there. *Id.* ¶ 42.

[3]     Plaintiffs believe that Defendants Kim Powers and Kira McManus Devitt created the Facebook post. *Id.* ¶ 51.

1   The post "went viral" on the Internet within minutes of being posted, and was read by

2   thousands of people nationwide.  *Id.* ¶ 53.

3        On the basis of these allegations, Plaintiffs filed the FAC on November 16, 2015.

4   They name three entity Defendants, who they allege "jointly own and operate" the Wine

5   Train: Napa Valley Wine Train, Inc. ("NVWTI"); Noble House Hotels & Resorts, Ltd.;

6   and Brooks Street Property Management, Inc.  *Id.* ¶¶ 10-14.  They also name three

7   individual defendants, who allegedly "committed and/or ratified" the aforementioned

8   conduct: Kim Powers; Kira Mcmanus Devitt; and Anna Marroquin.  *Id.* ¶¶ 19-21.

9        Plaintiffs advance four federal causes of action: race discrimination under 42 U.S.C.

10  § 2000d *et seq.* ("Title VI"); disability discrimination under 42 U.S.C. § 12181 *et seq.*

11  ("Title III"); conspiracy to interfere with civil rights under 42 U.S.C. § 1985 ("Section

12  1985"); and race discrimination under 42 U.S.C. § 1983 ("Section 1983").  *Id.* ¶¶ 67-98.

13  Plaintiffs also advance six state law causes of action, for which they seek the Court's

14  exercise of supplemental jurisdiction: race, age, and gender discrimination under Cal. Civ.

15  Code § 51 ("Unruh Civil Rights Act"); libel; slander; intentional infliction of emotional

16  distress; breach of contract; and breach of the covenant of good faith and fair dealing.  *Id.*

17  ¶¶ 99-149.  The instant motion is Defendants' motion: (1) for a more definite statement

18  pursuant to Federal Rule of Civil Procedure ("Rule") 12(e); (2) to dismiss pursuant to Rule

19  12(b)(6); and (3) to strike pursuant to Rule 12(f).  Defs.' Mot. for a More Definite

20  Statement; to Dismiss; and to Strike ("Mot.") (Docket No. 27).  Both parties have also

21  filed Requests for Judicial Notice.  Docket Nos. 27-1, 30.

22

23  **LEGAL STANDARD**

24

25  **I.   Motion for a More Definite Statement**

26       Under Rule 12(e), "[a] party may move for a more definite statement of a pleading

27  to which a responsive pleading is allowed but which is so vague or ambiguous that the

28  party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "Normally . . . the

United States District Court
Northern District of California

4

basis for requiring a more definite statement under Rule 12(e) is unintelligibility, not mere lack of detail." *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86, 110 (D.D.C. 2003) (internal quotation marks and citation omitted).  Accordingly, courts should not allow parties to subvert federal pleading requirements "by requiring a plaintiff to amend a complaint that would be sufficient to survive a motion to dismiss." *Potts v. Howard Univ.*, 269 F.R.D. 40, 43 (D.D.C. 2010).  Indeed, "[g]iven the liberal nature of the federal pleading requirements, courts are reluctant to compel a more definite statement pursuant to Rule 12(e) out of fear that such action will become a substitute for discovery." *Id.* at 42.

## II.    Motion to Dismiss

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545, 555.

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Moreover, "[r]eview is limited to the complaint," and "evidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (internal quotation marks and citation omitted).  Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

United States District Court
Northern District of California

Dismissal should be with leave to amend, unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998).

## III.   Motion to Strike

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead" and "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (citations omitted).

## IV.   Request for Judicial Notice

"When the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint." *Cervantes*, 5 F.3d at 1274 (internal quotation marks omitted). There are, however, two exceptions to this general rule. First, a court may consider "material which is properly submitted as part of the complaint." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Second, a court may consider judicially noticeable facts. *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001).

Federal Rule of Evidence 201 allows courts to take judicial notice of "adjudicative facts" that are "not subject to reasonable dispute." Fed. R. Evid. 201(a),(b). A fact may be considered not subject to reasonable dispute if it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

//

//

//

**DISCUSSION**

## I.   Motion for a More Definite Statement

Defendants move for a more definite statement on the basis that "the FAC does not properly notify Defendants of the claims with which they are charged by identifying the party or parties to whom each claim is directed." Mot. at 7. They argue that "[w]here there is more than one defendant and several claims for relief alleged, a motion for a more definite statement is proper if the complaint fails to identify which of the several defendants are responsible for the numerous claims alleged by the plaintiff." *Id.* But the only authority Defendants cite to support this argument – *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) – does not actually stand for this proposition. Rather, in *McHenry* the Ninth Circuit observed only that "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges," and where "[a]s a practical matter, the judge and opposing counsel . . . cannot use a complaint . . ., and must prepare outlines to determine who is being sued for what," it is within the judge's discretion to order a more definite statement. 84 F.3d at 1179.

The FAC is neither "prolix" nor "confusing." It includes nearly eight pages of detailed and chronologically organized "General Allegations," which provide the basis for the ten causes of action that follow. Within each cause of action, the FAC then identifies the sub-set of allegations that form the basis for that particular claim. Moreover, Defendants' argument for a more definite statement demonstrates that they understand the nature of each claim, and therefore how to defend against it. *See* Mot. at 7 ("Plaintiffs' claim for Libel uses the term 'Defendants' when identifying the alleged wrongdoers . . . [but] the 'General Allegations' fail to allege MARROQUIN had any part in this *alleged* libelous statement.") (emphasis in original). And as Rule 12(e) states, a more definite statement is as only appropriate where the defendant "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). *See also Potts*, 269 F.R.D. at 43 (denying Rule 12(e) motion for a more definite statement where "a review of the defendants' submissions

establishes that the defendants understand the crux of the plaintiff's [] claim.").

It is therefore readily apparent that a motion for a more definite statement is not warranted in this case.  Accordingly, the Court hereby DENIES Defendants' motion. Nevertheless, the Court recognizes that Defendants' request – "that Plaintiffs be ordered to file a second amended complaint which specifically identifies the party or parties to whom each claim is directed" (Mot. at 7) – seems reasonable in light of the fact that Plaintiffs' original complaint (Docket No. 1) identified the Defendants to whom each claim was directed.  At the January 25, 2016 hearing, the Court asked Plaintiffs' counsel whether Plaintiffs objected to adding the relevant Defendants back into the heading for each cause of action.  Plaintiffs' counsel explained that the omission of this information from the FAC was inadvertent, and that Plaintiffs had no objection to including it upon any further amendment of the complaint.  Accordingly, it is hereby ORDERED that Plaintiffs shall file an amended complaint that re-identifies the Defendants against whom each cause of action is brought.[4]

## II.    Motion to Dismiss

Defendants move to dismiss Plaintiffs' first, second, third, and fourth causes of action, in their entirety, for failure to state a claim.  Mot. at 1.  The Court addresses the sufficiency of the allegations for each cause of action in turn below.

### a.  Plaintiffs pleaded sufficient facts to state a claim for racial discrimination under Title VI.

Plaintiffs' first cause of action arises under Title VI.  FAC ¶¶ 67-79.  Title VI prohibits discrimination in programs receiving Federal financial assistance.  Specifically, Title VI provides that: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

United States District Court
Northern District of California

---

[4]     *See infra* at 26 (setting a deadline for further amendment of the complaint).

assistance."  42 U.S.C. § 2000d.

Defendants advance four reasons that Plaintiffs fail to state a claim under Title VI. For the reasons set forth below, these arguments fail as to all claims except any gender- or age-based discrimination claims.

### i.  Title VI does not prohibit age or gender discrimination.

First, Defendants argue that Plaintiffs' first cause of action should be dismissed as to any gender- or age-based claims, because by its plain language Title VI prohibits discrimination on the basis of "race, color, or national origin" only.  Mot. at 9.

Plaintiffs concede that Title VI bars neither gender nor age discrimination, and that the FAC therefore "incorrectly" includes the words "GENDER AND AGE" in both its caption and the heading to the first cause of action.  Opp'n to Defs.' Mots. ("Opp'n") at 8-9 (Docket No. 28).  Plaintiffs therefore request that the Court "*sua sponte*, strike the words, 'age' and 'gender' from the caption on page 1 of the FAC, and the word 'gender' in ¶ 70 on p. 14 of the FAC," or in the alternative, grant Plaintiffs leave to "amend the FAC to delete the words."  *Id.* at 9.

Given the clear text of Title VI and Plaintiffs' admission that the inclusion of "gender" and "age" in the first cause of action was in error, the Court hereby GRANTS WITH PREJUDICE Defendants' motion to dismiss any gender- or age-based claims brought under Title VI against all Defendants.  It is hereby ORDERED that Plaintiffs shall file an amended complaint that corrects the mistaken inclusion of "gender" and "age" under the first cause of action.

### ii.  Plaintiffs adequately allege that the Wine Train is a "recipient" of federal financial assistance.

Second, Defendants argue that Plaintiffs' first cause of action should be dismissed in its entirety because the coverage of Title VI is limited to "recipients" of federal financial assistance, and the Wine Train is not a "recipient" of federal funding.  Mot. at 9-11.

The Supreme Court has several times considered when an entity qualifies as a "recipient" of federal financial assistance for the purposes of Title VI.  One of the leading

cases is *United States Department of Transportation v. Paralyzed Veterans*, 477 U.S. 597 (1986).  There, the Court held that Section 504 of the Rehabilitation Act of 1973 – which prohibits discrimination on the basis of disability in substantially the same terms that Title VI prohibits discrimination on the basis of "race, color, or national origin" – does not apply to commercial airlines simply by virtue of the federal government's program of financial assistance to airports (namely, federal aid provided to all commercial airports in the form of improved runways, taxiways, ramps, etc.).  477 U.S. at 606-10.  In so holding, the Court drew a distinction between "intended *beneficiaries* [and] intended *recipients*" of federal financial assistance.  *Id.* (emphasis in original).  The Court explained that because "most federal assistance has 'economic ripple effects,' " statutes that limit their coverage to *recipients* of federal assistance "cover[] those who receive the aid, but do[] not extend as far as those who benefit from it."  *Id.* at 607 (citing *Grove City Coll. v. Bell*, 465 U.S. 555, 572 (1984)).[5]

Plaintiffs make the following allegations regarding the Wine Train's receipt of federal funds:

> On information and belief, Plaintiffs allege that NVWTI has received and continues to receive substantial federal funding and assistance for the continuing operation of the Wine Train, and for repair and maintenance of its exclusively used train tracks.  NVWTI received over $65 million in federal funds, at least $54 million of which was part of a Federal Stimulus Award for the relocation, repair, elevation and maintenance of its train tracks.  The Wine Train project is expected to take about two and a half years to complete.  The United States Army Corps of Engineers was assigned to carry out the project as part of their Napa Valley Flood Control Contract.

FAC ¶ 17.

Defendants attempt to refute these allegations by explaining that, in fact, the nature of the alleged funding renders the Wine Train only a *beneficiary* of federal funds, and

---

[5]   The Ninth Circuit has likewise addressed and affirmed this recipient/benefit distinction, explaining that an entity becomes a "recipient" of federal assistance only where it "affirmatively chose to receive Federal aid, and in so doing accepted concomitant responsibilities of complying with certain federal mandates . . . ."  *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 909 (9th Cir. 2013).

therefore outside the purview of Title VI.  Mot. at 10.  Specifically, Defendants argue that the alleged funds are being used for "involuntary capital improvements [] performed in connection with two existing railroad trestle bridges used by the Wine Train to accommodate the purpose of the [federally funded] Flood Project," and that such use of funds does not constitute *receipt* of federal aid for the purposes of Title VI.  *Id.*

It may very well be the case that, taken as true, Defendants' factual allegations regarding the nature and use of the alleged $65 million would render the Wine Train only a *beneficiary* of federal funds.  But on a motion to dismiss, it is the plaintiff's allegations, not the defendant's, which courts must take as true.  Indeed, the Ninth Circuit has expressed the importance of ignoring factual challenges, such as those now made by Defendants, at the pleadings stage: "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), [r]eview is limited to the complaint . . . factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."  *Lee*, 250 F.3d at 688 (internal quotation marks and citations omitted).  In *Lee*, for example, the Ninth Circuit reversed the dismissal of a complaint where the "decision to dismiss plaintiffs' federal claims was rooted in defendants' factual assertions," because the district court improperly "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs."  *Id.*

Defendants invite these very mistakes by asking the Court to look outside the pleadings – to the facts set forth in their moving papers and request for judicial notice – to decide whether the $65 million in federal funds accepted by the Wine Train constitute "receipt" for the purposes of Title VI.[6]  As in *Lee*, then, "defendants' arguments in favor of

---

[6]   It is certainly true that a court need not "blindly accept the allegations in the pleadings as true if these allegations are contradicted by uncontested facts set forth in (1) exhibits to the non-moving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed."  *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007) (unpublished) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir.

affirming the dismissal of plaintiffs' federal claims rest almost entirely on factual challenges." *Id.* Once the Court sets aside all factual allegations introduced only by Defendants, it is left with the following: the FAC alleges that the Wine Train received "substantial federal funding and assistance for the continuing operation of the Wine Train, and for repair and maintenance of its exclusively used train tracks," including "over $65 million in federal funds, at least $54 million of which was part of a Federal Stimulus Award for the relocation, repair, elevation and maintenance of its train tracks." FAC ¶ 17. One these allegations alone, it is certainly plausible that the Wine Train was the "recipient" of federal funding. *Iqbal*, 556 U.S. at 678.

Therefore, while discovery may very well confirm Defendants' factual challenges regarding the alleged federal funding, a weighing of the parties' facts and a final determination of their merit is properly postponed until a motion for summary judgment. Accordingly, the Court hereby DENIES Defendants' motion to dismiss the first cause of action for failure to plead "receipt" of federal funds under Title VI.

### iii.   Plaintiffs adequately allege that the Wine Train operates a "program or activity" receiving federal financial assistance.

Third, Defendants argue that Plaintiffs' first cause of action should be dismissed in its entirety because Defendants do not operate a "program or activity" that receives federal financial assistance, as required under Title VI. Mot. at 11.

Defendants are correct that Title VI coverage is limited to a "*program or activity receiving Federal financial assistance.*" 42 U.S.C. § 2000d (emphasis added). The term "program or activity" is defined to include a variety of private entities. 28 C.F.R. § 42.102(d). Of relevance to the current motion, Title VI extends to "[a]n entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . [i]f assistance is extended to such corporation, partnership, private organization, or sole proprietorship *as*

---

2001)). The factual allegations Defendants offer to rebut the FAC, however, are introduced only through their request for judicial notice. And as discussed *infra* in Section IV(a), Defendants' request for judicial notice is improper, and therefore cannot be the basis for a factual challenge to the allegations contained in the FAC.

United States District Court
Northern District of California

1    *a whole*."  28 C.F.R. § 42.102(d)(3)(i)(A) (emphasis added).  The legislative history of the

2    Civil Rights Restoration Act of 1987 explains this definition as follows:

> Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose.  Federal financial assistance to the Chrysler Company for the purpose of preventing the company from going bankrupt would be an example of assistance to a corporation "as a whole."

7    S. Rep. No. 100–64 at 17 (1988).

8            As discussed above, Plaintiffs allege that the Wine Train received "substantial

9    federal funding and assistance for the continuing operation of the Wine Train, and for

10   repair and maintenance of its exclusively used train tracks."  FAC ¶ 17.  Defendants again

11   attempt to refute this allegation with extraneous allegations of their own.  Mot. at 11.

12   Specifically, Defendants argue that the Wine Train is not an eligible "program or activity"

13   because the federal funds at issue were provided for the "specific, narrow purpose of . . .

14   provid[ing] flood protection to the city and county of Napa as a whole," and the "capital

15   improvements themselves as to the Wine Train were also very narrow and specific, e.g.,

16   replacement of two existing railroad trestle bridges."  *Id.*

17           Again, it may very well be the case that, taken as true, Defendants' factual

18   allegations render the Flood Project improvements too narrow to qualify as receipt of

19   Federal funds by a "program or activity as a whole."  But as discussed above, it would be

20   inappropriate for the Court to consider Defendants' factual allegations on a motion to

21   dismiss.  Once the Court sets aside all factual allegations introduced only by Defendants, it

22   is facially plausible that the Wine Train was a "program or activity" under Title VI.  *Iqbal*,

23   556 U.S. at 678.  The FAC alleges that the Wine Train accepted Federal funds "for the

24   continuing operation of the Wine Train," which is a broader application of the funds than

25   Defendants allege, and would be sufficient to qualify as receipt of funds "as a whole."

26   FAC ¶ 17.  Moreover, even if the Court were to consider the Defendants' factual

27   allegations, the FAC ties only $54 million of the total $65 million in alleged federal funds

28   to the "relocation, repair, elevation and maintenance of [the Wine Train] train tracks."  *Id.*

United States District Court
Northern District of California

1    This would leave $11 million unaccounted for by the Defendants' improper allegations

2    regarding the "narrow purpose" of the repair funding, a sum that would itself be sufficient

3    to state a claim that funds were extended to the Wine Train "as a whole."

4         Accordingly, the Court hereby DENIES Defendants' motion to dismiss the first

5    cause of action for failure to plead a "program or activity" under Title VI.

6              **iv.   Plaintiffs need not plead that they were "intended beneficiaries"**

7              **of the federal funds to survive a motion to dismiss.**

8         Fourth, Defendants argue that Plaintiffs' first cause of action should be dismissed in

9    its entirety because Plaintiffs failed to allege that they were "intended beneficiaries" of a

10   federally funded program or activity.  Mot. at 12.

11        Defendants cite several cases for the proposition that "[t]o survive a motion to

12   dismiss, Plaintiffs must also come forward with well-plead facts that plausibly show . . .

13   they are an intended beneficiary of the federally-funded program the Defendants . . .

14   participated in."  Mot. at 12 (internal quotation marks, alterations, and citations omitted).

15   The actual source of the case law cited by Defendants, however, makes the following

16   distinction between what plaintiffs must *plead* to state a claim, and what they must *prove*

17   to prevail on said claim:

18            To *state* a Title VI claim for damages, a plaintiff need only
             allege that (1) the entity involved is engaging in racial
19            discrimination; and (2) the entity involved is receiving federal
             financial assistance.  To *prevail* on a Title VI claim, however, a
20            plaintiff must prove (1) that he is an intended beneficiary of the
             federally-funded program the defendants . . . participated in,
21            and (2) that the defendant intentionally discriminated against
             him in violation of the statute.
22

23   *Epileptic Found. v. City and Cty. of Maui*, 300 F. Supp. 2d 1003, 1011 (D. Haw. 2003)

24   (internal quotation marks and citations omitted) (emphasis added).  In so holding, the

25   *Epileptic Foundation* court cited case law that states: "Defendants next move to dismiss on

26   the grounds plaintiff has failed to plead that he was an intended beneficiary of the

27   federally-funded program the defendants are alleged to have participated in.  The court

28   finds, however, that there is no requirement for such a pleading and declines to dismiss on

14

1   that ground." *Wrenn v. Kansas*, 561 F.Supp. 1216, 1221 (D. Kan. 1983).

2           Defendants therefore mischaracterize the cases they cite for support, by conflating

3   what plaintiffs must *allege* with what plaintiffs must *prove*.  Once properly considered, not

4   even the authority cited by Defendants requires that plaintiffs *allege* they were "intended

5   beneficiaries" to survive a motion to dismiss a Title VI claim.  The FAC therefore cannot

6   be insufficient for failure to plead that Plaintiffs were "intended beneficiaries" of federal

7   funding under Title VI.  Whether Plaintiffs have actually *proven* this element, after being

8   given an opportunity to conduct discovery, is an issue better left for summary judgment.

9           Accordingly, the Court hereby DENIES Defendants' motion to dismiss the first

10  cause of action for failure to plead that Plaintiffs were "intended beneficiaries

11          **b.  The Neal Plaintiffs pleaded sufficient facts to state a claim under Title**

12              **III of the Americans with Disabilities Act.**

13          Plaintiffs Deborah Neal and Katherine Neal bring the second cause of action under

14  Title III of the Americans with Disabilities Act ("ADA").  FAC ¶¶ 80-86.  The ADA

15  prohibits disability discrimination by places of public accommodation.  Specifically, the

16  ADA provides that:

17              No individual shall be discriminated against on the basis of
                disability in the full and equal enjoyment of the goods,
18              services, facilities, privileges, advantages, or accommodations
                of any place of public accommodation by any person who
19              owns, leases (or leases to), or operates a place of public
                accommodation.
20

21  42 U.S.C. § 12182(a).  To state a claim under the ADA, "a plaintiff must show that: (1) he

22  is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns,

23  leases, or operates a place of public accommodation; and (3) the plaintiff was denied

24  public accommodations by the defendant because of his disability."  *Arizona ex rel.*

25  *Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

26          Defendants argue that the FAC fails to state a claim under the ADA because "the

27  FAC does not allege facts that explain what modification was requested by the Neal

28  Plaintiffs (if any)," and/or "what barriers (if any) required removal within the historic

United States District Court
Northern District of California

15

Wine Train, whether that removal is readily achievable, or what alternative to barrier removal is readily achievable."  Mot. at 13.  Defendants therefore do not challenge the first or second elements of Plaintiffs' ADA claim, but rather the sufficiency of the Plaintiffs' allegations with respect to the third element: that "the plaintiff was denied public accommodations by the defendant because of his disability."  *Goddard*, 603 F.3d at 670.

The ADA itself defines the sort of "specific prohibitions" that would constitute discrimination under the third element, including: "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities"; and "failure to remove . . . transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(ii), (iv). Defendants are therefore correct that two of the ways Plaintiffs could allege the third element is through failure to make a reasonable modification and failure to remove a transportation barrier.

Contrary to Defendants' representations, however, the FAC does allege that Plaintiffs informed the Wine Train of the Neals' mobility impairments and that the Neals were promised an accommodation.  The FAC states that when booking the group's reservations, Lisa Johnson "informed [Defendants] that some of the members of the group have some mobility issues," to which the reservations agent responded that "Wine Train would be happy to accommodate the group and their requests and requirements."  FAC ¶ 25.  Moreover, when Deborah Neal phoned the Wine Train reservation office roughly one month before the trip, she "informed the Reservations agent that she underwent [knee] surgery recently and that her mobility was restricted," and she was again "assured that the NVWTI would honor the group's requests."  *Id.* ¶ 28.  Nevertheless, when the Neals arrived to board the Wine Train, "there were no attendants to help [them] in boarding the train," and the other Plaintiffs had to assist the mobility-impaired Neals in boarding the train themselves.  FAC ¶ 32.  Finally, upon exiting the train, the Neals were forced to

"march through all the other six [train] cars," were given no assistance by Wine Train staff in the process, and were instead told "to hurry up" even though they had mobility limitations and experienced physical difficulty walking through the train.  *Id.* ¶¶ 42-44.

The FAC therefore alleges, in detail, that despite being promised accommodations for their mobility restrictions, none were provided to the Neal Plaintiffs.  Though the Neals were ultimately able to board and exit the Wine Train, it was with much physical difficulty and only with the assistance of non-Wine Train staff.  *Id.* ¶¶ 32, 42-44.  To deny a motion to dismiss on these allegations would be to suggest that the Wine Train could also avoid liability for failure to provide wheelchair accessible entry to a patron, simply because the patron's complaint did not allege that he or she specifically requested a ramp or lift in advance of his or her trip.  Defendants have provided the Court with no authority holding that such a result would be proper.  The Court therefore finds that Plaintiffs have alleged sufficient factual content to enable the Court to draw the reasonable inference that Defendants failed to make reasonable modifications to their policies, practices, or procedures, in violation of the ADA.  *Iqbal*, 556 U.S. 678 (2009).

Accordingly, the Court hereby DENIES Defendants' motion to dismiss the second cause of action.

### c.  Plaintiffs failed to state a claim under Section 1985.

Plaintiffs' third cause of action arises under Section 1985, which prohibits conspiracies to interfere with certain civil rights.  FAC ¶¶ 87-92.  Specifically, Section 1985 provides that:

> If two or more persons . . . conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

United States District Court
Northern District of California

1  42 U.S.C. § 1985(3).

2        Defendants argue that Plaintiffs fail to state a Section 1985 claim because the FAC

3  "fails to allege any facts that support NVWT, Brooks Street, and Noble House agreed to

4  any sort of conspiracy."  Mot. at 15.  Though Defendants identify only a subset of the ways

5  Plaintiffs could allege a Section 1985 conspiracy – i.e., one between the three corporate

6  Defendants, rather than between any individual Defendants – they are correct that

7  Plaintiffs must specifically allege that *some conspiracy* occurred.  *See Karim-Panahi v.*

8  *LAPD*, 839 F.2d 621, 626 (9th Cir. 1988) (holding that a Section 1985 claim "must allege

9  facts to support the allegation that defendants conspired together," and that "[a] mere

10  allegation of conspiracy without factual specificity is insufficient").

11        The only allegation related to the Section 1985 claim is that "Defendants . . .

12  espoused and promulgated discriminatory policies and practices throughout the operations

13  of the Wine Train and conspired to deprive minorities, seniors, disabled passengers and

14  other citizens of the United States of their civil rights, as alleged herein."  FAC ¶ 89.  This

15  general allegation of "policies and practices" is precisely the sort of "mere allegation of

16  conspiracy" that the Ninth Circuit has found to be insufficient to state a claim under

17  Section 1985.  *Karim-Panahi*, 839 F.2d at 626.  With nothing more than this general

18  allegation to support their conspiracy claim, Plaintiffs have therefore failed to state a claim

19  under Section 1985.

20        It is anything but clear, however, whether this deficiency could be cured by

21  amendment, (*Steckman*, 143 F.3d at 1296), as Plaintiffs may very well possess factual

22  allegations not currently contained in the complaint that the Defendants (individual or

23  corporate) conspired to deprive them of their civil rights.  Accordingly, the Court hereby

24  GRANTS WITHOUT PREJUDICE Defendants' motion to dismiss the third cause of

25  action.

26        **d.  Plaintiffs failed to state a claim under Section 1983.**

27        Plaintiffs' fourth cause of action arises under Section 1983.  FAC ¶¶ 93-98.  To

28  state a claim under Section 1983, a plaintiff must allege two elements: (1) that a right

United States District Court
Northern District of California

18

secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law.  *Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1173 (N.D. Cal. 2010).  Here, Defendants do not argue that Plaintiffs insufficiently pleaded the first factor; rather their motion to dismiss the Section 1983 claim rests on the second factor.  Mot. at 15.

In determining whether a private entity (such as the Wine Train[7]) is subject to suit under Section 1983, the inquiry is similar to the state action requirement of the Fourteenth Amendment: courts must ask, "is the alleged infringement of federal rights 'fairly attributable to the State?' "  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  Federal courts have recognized at least four different tests to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.  *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  Plaintiffs appear, from the language of the FAC, to allege state action under the joint action test.  The FAC states, in pertinent part:

> In furtherance of their discriminatory policies and practices, Defendants, and each of them, *co opted* [*sic*] *the support, cooperation and services of the police* to discriminate against Plaintiffs, and each of them, and to expel them from the Train *as if it was a joint official action of the police*.

FAC ¶ 95 (emphasis added).  To satisfy the joint action test, a plaintiff must plead that a private party's actions are "inextricably intertwined" with those of the government.  *See Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1211 (9th Cir. 2002) (holding that "substantial cooperation" must be shown between the private party and the state; joint action test may also be satisfied by a conspiracy between the state and a private party).

Defendants contend that the facts alleged by Plaintiffs amount to a single request by Defendants for the police to perform their peace-keeping functions.  Mot. at 16.  In opposition, Plaintiffs simply state: "Plaintiffs have shown that to evict Plaintiffs

---

[7]     Although Plaintiffs adequately allege that Defendants are recipients of federal funds for purposes of the Title VI claim, receipt of federal funds does not transform a private entity into a public one for purposes of Section 1983.  *See Rendell-Baker*, 457 U.S. at 840.

discriminatorily from the Wine Train, Defendants co-opted the services of local police in St. Helena, and had the police escort all the Plaintiffs to a car to drive them back to Napa, the starting point of the train ride."  Opp'n at 16.  Plaintiffs do not address – or point to any part of the FAC that refutes – the contention that the police were not involved in the actual eviction of Plaintiffs from the train.  Plaintiffs likewise cite no authority to support their theory of "co-opting" police services that would satisfy the joint action test.

Police officers' participation for peace-keeping purposes alone is not enough to constitute joint action.  *See Riviera v. Green*, 775 F.2d 1381, 1384 (9th Cir. 1985) (holding that private party who called police was not state actor); *cf. Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983) (finding state action where landlord performing eviction was accompanied by police because facts involved "more than a single incident of police consent to stand by in case of trouble").  Here, Plaintiffs have not alleged facts amounting to substantial cooperation, inextricable intertwinement, or a conspiracy between the police and Defendants that would make them state actors under the joint action test.  *Brunette*, 294 F.3d at 1211; *see also Annan-Yartley v. Honolulu Police Dep't.*, 475 F. Supp. 2d 1041, 1047-48 (D. Haw. 2007).  Instead, the factual allegations in the FAC portray a series of events that culminate with Wine Train staff leading Plaintiffs off the train, where local police were "waiting" to escort them to a van that would take them to their cars.  FAC ¶¶ 42, 44, 46.  Despite numerous conclusory statements that the police officers were there to "escort [Plaintiffs] off the train," no factual allegations support the contention that the police officers participated in the discrimination and ultimate ejection of Plaintiffs from the train.  *Id.* ¶¶ 38, 39, 46, 95, 96.

Though the Court construes allegations in the FAC in the light most favorable to Plaintiffs, the FAC lacks any factual allegations of the substantial cooperation between Defendants and the police such that Defendants could be considered acting under color of state law.  Accordingly, the Court hereby GRANTS Defendants' motion to dismiss

1    Plaintiffs' fourth cause of action.  Because this deficiency may be cured by amendment

2    (*Steckman*, 143 F.3d at 1296), dismissal shall be WITHOUT PREJUDICE.[8]

3

4    **III.    Motion to Strike**

5        Plaintiffs' tenth cause of action is a state law claim for "Breach of Implied

6    Covenant of Good Faith and Fair Dealing."  FAC ¶¶ 137-149.  The last paragraph of the

7    FAC, Paragraph 149, states:

8            As a proximate result of Defendants' breach of the implied
             covenant of good faith and fair dealing, Plaintiffs have suffered
9            natural and probable consequences of wrongdoing, including . .
             . feelings of severe emotional distress. . . .  Defendants' acts
10           were done with the willful knowledge that Plaintiffs could
             suffer severe harm as a result thereof.   The actions of
11           Defendants were malicious and oppressive and done in
             conscious disregard for the rights of the plaintiffs entitling
12           them to punitive damages.

13   FAC ¶ 149.  Defendants contend that punitive damages and emotional distress are not

14   available for breach of the covenant of good faith and fair dealing, and accordingly move

15   to strike Paragraph 149 in its entirety without leave to amend.

16       In California, the breach of the covenant of good faith and fair dealing is a contract

17   claim.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000).  Current California law

18   maintains that damages for the breach of the covenant of good faith and fair dealing are

19   limited to contract rather than tort remedies, with an exception for bad faith in insurance

20   contracts.  *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988) ("Because the

21   covenant is a contract term, however, compensation for its breach has almost always been

22   limited to contract rather than tort remedies."); *Cates Constr., Inc. v. Talbot Partners*, 21

23   Cal. 4th 28, 61 (1999) ("In the insurance policy setting, an insured may recover *damages*

24

25   _____
     [8]     This Order does not extend to any statements or documents that were raised by
26   counsel for the first time at oral argument, as it would be improper for the Court to
     consider any purported facts not alleged in the FAC or discussed in the parties' papers at
27   this time.  Accordingly, this Order shall not be interpreted as addressing the question
     whether any facts contained in such extraneous documents, including those from the Wine
     Train website relating to the relationship between the Wine Train rail officers and local
28   police, are sufficient to satisfy the joint action test.

1    *not otherwise available in a contract action*, such as emotional distress damages resulting

2    from the insurer's bad faith conduct and punitive damages if there has been oppression,

3    fraud, or malice by the insurer.") (internal citations omitted) (emphasis added).  Thus, the

4    tort remedy of emotional distress damages is not available to Plaintiffs for the tenth cause

5    of action.[9]

6        Punitive damages are likewise not recoverable in a claim for breach of the covenant

7    of good faith and fair dealing.  *Cates*, 21 Cal. 4th at 61; *Freeman & Mills, Inc. v. Belcher*

8    *Oil Co.*, 11 Cal. 4th 85, 102 (1995).  California's punitive damages statute provides that

9    exemplary and punitive damages are available "[i]n an action for the breach of an

10   obligation not arising from contract."  Cal. Civ. Code § 3294(a).  Thus, California law

11   clearly prohibits Plaintiffs from recovering punitive damages for the tenth cause of action.

12       While it is therefore clear that the damages Plaintiffs seek in Paragraph 149 are

13   improper, the Court must still determine the proper means for removing them from the

14   FAC.  Defendants acknowledge *Whittlestone, Inc. v. Handi-Craft Co.*, which held that

15   Rule 12(f) "does not authorize a district court to strike a claim for damages on the ground

16   that such damages are precluded as a matter of law."  618 F.3d 970, 974 (9th Cir. 2010).

17   The *Whittlestone* Court reversed the district court's dismissal of a claim for lost profits and

18   consequential damages from the complaint under Rule 12(f), because "courts may not

19   resolve disputed and substantial factual or legal issues in deciding a motion to strike."  *Id.*

20   at 973 (internal marks omitted).[10]

21

22

23   _____

     [9]    The Court is unpersuaded by the cases cited by Plaintiffs in opposition, as all of the
24   cases involved tort claims, not contract claims.  *See e.g.*, *Eastwood v. Horse Harbor*
     *Found., Inc.*, 170 Wash. 2d. 380, 393-94 (2010) (applying Washington law; holding that
25   the existence of a contract does not bar recovery in tort when there was a breach of duty
     outside of the contractual terms); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865,
26   880 (9th Cir. 2007) (applying Nevada law; holding that the economic loss doctrine did not
     apply to fraud or conversion claims).
27   [10]   The Court notes that in *Whittlestone*, the propriety of the claim for lost profits and
     consequential damages turned on contract interpretation, and therefore was not as clear cut
28   as the availability of tort damages in a contract claim, which is at issue here.  618 F.3d at
     975 n.2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    While the great weight of authority follows *Whittlestone*, some courts continue to

2    utilize Rule 12(f) to strike certain types of damages as a matter of law.  *See, e.g., I.R. ex*

3    *rel. Nava v. City of Fresno*, No. 12-CV-00558, 2012 WL 3879974, at *2 (E.D. Cal. Sept.

4    6, 2012) ("[A] motion to strike may be used to strike a prayer for relief where the damages

5    sought are not recoverable as a matter of law."); *Garcia v. M-F Athletic Co., Inc.*, No. 11-

6    CV-2430, 2012 WL 531008, at *4 (E.D. Cal. Feb. 17, 2012).  Having reviewed the

7    authority in the Ninth Circuit, the Court finds that the proper method for rejecting

8    Plaintiffs' claims for tort and punitive damages in the tenth cause of action is to construe

9    Defendants' motion to strike as an incorrectly labeled motion to dismiss, and dismiss the

10   offending damages from the FAC.  *MacLellan v. Cty. of Alameda*, No. 12-CV-5795, 2013

11   WL 163732, at *1 n.1 (N.D. Cal. Jan. 15, 2013); *Canfield v. Atlas Storage South Bay*, No.

12   12-CV-1574, 2012 WL 4062479, at *2 (S.D. Cal. Sept. 14, 2012); *Rhodes v. Placer Cty.*,

13   2011 WL 1302240, at *20 n.18 (E.D. Cal. Mar. 31, 2011).

14   For these reasons, the Court construes Defendants' 12(f) motion as a motion to

15   dismiss, and hereby DISMISSES WITH PREJUDICE the damages sought in Paragraph

16   149.  It is hereby ORDERED that Plaintiffs shall file an amended complaint that does not

17   include tort or punitive damages under the tenth cause of action.  Plaintiffs may still seek

18   tort remedies for their tort claims and punitive damages as authorized by law, but such

19   damages are not available in a claim for breach of the implied covenant of good faith and

20   fair dealing.

21

22   **IV.    Requests for Judicial Notice**

23   Both parties request that the Court take judicial notice of various documents to

24   support their papers.  For reasons stated below, the Court finds the subjects of both parties'

25   requests improper and therefore DENIES the parties' requests for judicial notice.

26   **a.  Defendants' request for judicial notice is improper.**

27   Defendants request that the Court judicially notice 15 exhibits in connection with

28   their motion: exhibits 1-12 are various licenses purportedly showing that NVWTI is the

23

sole owner of the Wine Train; exhibits 13 and 14 are excerpts from public reports published by governmental agencies concerning the Flood Project; and exhibit 15 is the City of Napa Municipal Code Section 17.52.300.

Plaintiffs contend that the exhibits are improper for judicial notice because Defendants attempt to use the judicial notice vehicle "as a substitute for more rigorous evidentiary requirements and careful fact-finding."  Pls.' Opp'n to Defs.' RJN at 3 (citing *Korematsu v. United States*, 584 F. Supp. 1406, 1415 (N.D. Cal. 1984)).  Plaintiffs argue that the items for which Defendants request judicial notice are improper, irrelevant, and not authenticated.  Pls.' Opp'n to Defs.' RJN at 4-6.

### i.  Licenses (Exs. 1-12)

Defendants contend that the various licenses are judicially noticeable because they are "records and documents on file with administrative agencies."  Defs.' RJN at 3 (citing *Lee*, 250 F.3d at 688-89).  However, while a court may take judicial notice of undisputed matters of public record, judicial notice is taken of the fact that the records exist, not the facts stated within the records.  *Lee*, 250 F.3d at 690.  Defendants do not ask the Court to judicially notice, for example, the fact that the Wine Train has a particular license, or even that NVWTI is the only entity listed on the various business licenses; either of which could be judicially noticed.  Instead, Defendants ask the Court to make an inferential leap: because NVWTI is the only entity listed on the various licenses, it is the sole owner and operator of the Wine Train.  This is not a permissible inference for purposes of judicial notice, and such factual challenges are more proper for a summary judgment motion.

### ii.  Flood Project Reports (Exs. 13, 14); Municipal Code (Ex. 15)

Defendants contend that government agency reports and websites are "inherently authentic and reliable and are easily verified as matters of public record."  Defs.' Reply at 4.  Again, Defendants do not ask the Court to judicially notice the reports to show the existence of the Flood Project, or even the amount of money the Wine Train receives from the Flood Project.  Rather, Defendants attempt to use the Flood Project Reports to show that the purpose of the Flood Project is not to improve the Wine Train as a whole; thus, the

United States District Court
Northern District of California

1   Wine Train is not a recipient of federal funds.  This is not a permissible inference for

2   purposes of judicial notice, and is also an improper factual challenge.  Defendants further

3   contend that the City of Napa municipal code is judicially noticeable because it is a

4   "category of common knowledge."  Defs.' RJN at 4.  However, again, while it would be

5   proper for the Court to judicially notice the existence of the municipal code or even its

6   plain language, the Court could not use the municipal code to make any inferences about

7   the nature of the funding the Wine Train receives.

8       Defendants also contend that "Plaintiffs' FAC refers to and relies on allegations and

9   information relating to the [Flood Project] . . . and the issue of Federal assistance for the

10  Wine Train that Plaintiffs do not attach to the FAC yet clearly reference."  Defs.' Reply at

11  2.  Thus, Defendants attempt to use incorporation by reference to allow the Court to review

12  Exhibits 13-15.  This argument is unavailing because Plaintiffs do not specifically

13  reference the reports and municipal code; rather they reference the Wine Train's receipt of

14  federal funds.  Such reference does not constitute Plaintiffs referring "extensively" to the

15  document or the document forming the basis of Plaintiffs' claims, which are prerequisites

16  to a district court using incorporation by reference to consider evidence outside the

17  pleadings.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk*

18  *v. Cable Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

19          **b.  Plaintiffs' request for judicial notice is improper.**

20      Plaintiffs request that the Court judicially notice six newspaper articles relating to

21  the alleged federal funding of the Wine Train.  Pls.' RJN (Docket No. 30).  Plaintiffs'

22  argument that the articles are judicially noticeable is that the articles "are in the public

23  domain."  *Id.* at 2.  However, newspaper articles – and the facts contained therein – are not

24  free from reasonable dispute.[11]  To the extent that courts may judicially notice newspaper

25  articles, it is only to "indicate what was in the public realm at the time, not whether the

26

27  _____

    [11]     While this Order does not extend to any documents raised by counsel for the first
28  time at oral argument, the Court notes that statements made by Defendants on their website
    regarding the relationship between the Wine Train and local police would be similarly
    improper for judicial notice if offered to prove the facts asserted therein.

contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citing *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 410 n.15 (3d Cir. 2006)); *Gerritsen v. Warner Bros. Ent., Inc.*, 2015 WL 4069617, at *8 (C.D. Cal. Jan. 30, 2015).  Plaintiffs do not ask the Court to judicially notice that the articles were published at a certain time in a particular domain, or what was stated in the articles for purposes of public notice.  Rather, Plaintiffs ask the Court to judicially notice – and take as true – the factual assertions contained within the articles.  Thus, Plaintiffs' request for judicial notice is improper.

**CONCLUSION**

For the reasons set forth above, the Court hereby DENIES Defendants' Motion for More Definite Statement, GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss, GRANTS Defendants' Motion to Strike, and DENIES the parties' Requests for Judicial Notice.

Should Plaintiffs elect to file an amendment to the FAC curing the deficiencies identified herein, they shall do so by February 23, 2016.  Failure to file a timely amended complaint shall result in dismissal of all claims with prejudice.

**IT IS SO ORDERED.**

Dated:  02/09/16

_____
THELTON E. HENDERSON
United States District Judge

United States District Court
Northern District of California

26